

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-1996

# Shiring v. Runyon

Precedential or Non-Precedential:

Docket 95-3547

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Shiring v. Runyon" (1996). *1996 Decisions.* Paper 121.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/121

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

TERRY J. SHIRING,
                              Appellant,

                    v.

     MARVIN  T. RUNYON, POSTMASTER GENERAL,
         UNITED STATES POSTAL SERVICE,
                              Appellee.


_____


An Appeal from the United States District Court
    For the Western District of Pennsylvania
             D.C. No. CV-94-0593
_____


Argued  May 21, 1996

Before:  Sloviter, Chief Judge,
    Sarokin, and Rosenn, Circuit Judges.

Opinion Filed July 26, l996
_____


Mark D. Wade, Esquire (argued)
Caroselli, Spagnolli & Beachler
312 Boulevard of the Allies
Eighth Floor
Pittsburgh, PA  15222
Counsel for Appellant


Frederick W. Thieman, U.S. Attorney
Michael C. Colville, Asst. U.S. Attorney
Western District of Pennsylvania
633 U.S. Post Office & Courthouse
7th Avenue & Grant Street
Pittsburgh, PA  15219-1955


R. Andrew German, Managing Counsel

Janet E. Smith (argued)
Legal Policy Section
Law Department
U.S. Postal Service
475 L'Enfant Plaza, SW
Washington, DC  20260-1136
Counsel for Appellee

---

OPINION OF THE COURT

---

ROSENN, Circuit Judge.

Terry Shiring, formerly employed as a mail carrier by the United States Postal Service, appeals from the decision of the United States District Court for the Western District of Pennsylvania, granting summary judgment for the Postal Service on Shiring's claim of discrimination in violation of the federal Rehabilitation Act of 1973.  Shiring, whose medical problems made it impossible for him to continue at his job of postal carrier, contends that the Postal Service was obligated to find a new job for him that he was capable of performing within his physical limitations.  Because Shiring made no showing that such a position exists, or that he properly applied for transfer, we will affirm the grant of summary judgment in favor of the Postal Service.

I.

In 1984, the United States Postal Service hired Shiring as a part-time flexible (PTF) letter carrier.  This position meant that Shiring was not guaranteed a regular route or a full forty-hour work week.  The position is entry level, with the least amount of seniority of all postal employees.  At Shiring's request, the Postal Service transferred him several times to different locations, employing him as a PTF carrier in each location.  In 1987, Shiring was reassigned to the Oakmont, Pennsylvania Post Office.

In early 1990, Shiring began to experience severe foot pain when delivering the mail along his routes.  In May of that year, he sought treatment from Dr. Lewis Stein.  Dr. Stein diagnosed Shiring's condition as hallux rigidas limites and a possible sesemold bone fracture of his right foot.  Stein fitted Shiring for protective orthopedic devices and informed him that he was restricted from excessive walking before the devices arrived.  Shiring notified the Postal Service, which placed him on light duty work.  The Postal Service assigned Shiring to "casing" mail, which meant sorting the mail before delivery.  Normally, each letter carrier is responsible for casing the mail for his or her own route; however, during the period Shiring was on light duty, the Post Office had him case the mail for all eight carrier routes.

Also during this time, Shiring filed a claim with the Office of Workers' Compensation. He received compensation for the work-time he missed due to his disability.

After the orthopedic devices arrived, Shiring went back to work as a letter carrier. However, the devices failed to ease his condition, and, in December of 1990, Dr. Stein diagnosed Shiring as permanently disabled. Shiring was restricted from more than occasional walking, for a total of less than one hour in an eight-hour workday. The Oakmont Post Office put him back on the modified light duty position it had earlier created. However, in January of 1993, the Post Office determined that there was nothing more available for him at the time consistent with his limitations.

Shiring asserts that during the time before he was discharged, several postal positions became available that he could have performed within his physical limitations. He claims that the Postal Service refused to transfer him to one of these clerk or counterperson positions. The only proof, however, that Shiring asserts to support this contention is an excerpt from his own deposition in which he seems to state that he was transferred to a light duty position at the McKnight Road office, but was then released from that position because it was a job which the union was entitled to have open for bids.

Shiring remained unemployed, receiving worker's compensation at 75% of his regular salary, from January, 1993 until November of 1994. At that time, the Postal Service created a new position for him at its office in Pittsburgh, Pennsylvania. On December 12, Shiring accepted the position and began to work again.

However, in April of 1994, Shiring had filed the instant complaint, alleging that the Postal Service discriminated against him in violation of the Rehabilitation Act of 1973, 29 U.S.C. 701 et. seq. Shiring alleged that he was an otherwise qualified disabled individual, who was capable of performing the essential functions of his office with reasonable accommodations, and that the Postal Service had failed to make reasonable accommodations for him. He further alleged that it had discharged him solely because of his handicap. Because Shiring was seeking backpay and reinstatement of pension and seniority losses, he did not dismiss his complaint when he accepted his current position.

In March of 1995, the United States Postal Service moved for summary judgment. It asserted that Shiring was unable to meet his burden of showing that he was an otherwise qualified disabled individual. Shiring had stated at his deposition that he was unable to physically deliver the mail, and that no accommodation on the part of the Postal Service would have made this feat possible. The Postal Service pointed out that mail delivery was an essential function of letter carriers, and that a disabled person must still be capable of performing the essential functions of a position in order to be otherwise qualified. Because Shiring could not, it claimed that his job was not protected by the Rehabilitation Act.

In response, Shiring argued that the 1992 amendments to the Act showed a Congressional intent to apply the standards of the

Americans with Disabilities Act in determining whether the Rehabilitation Act had been violated. Because the ADA defined "reasonable accommodation" to include reassignment to certain vacant positions, Shiring asserted that the Postal Service did not make reasonable accommodations for his disability when it refused to reassign him from letter carrier to other positions which did not require walking.

The district court did not consider whether reassignment was a reasonable accommodation under the Rehabilitation Act. Thus, it did not discuss whether any positions were available, or whether plaintiff had established that he had applied for, and was qualified for, the open positions. Rather, the district court considered "reasonable accommodations" only as it related to plaintiff's performance in the specific job of letter carrier. Finding that there were no accommodations the Postal Service could adopt which would enable plaintiff to fulfill the essential elements of his job, the district court determined that plaintiff was not a qualified individual within the meaning of the Rehabilitation Act. Therefore, because Shiring had not established a prima facie case, the district court granted summary judgment in favor of the United States Postal Service.

## II.

The Rehabilitation Act of 1973, 29 U.S.C. 701 et. seq., is applicable only to federal employers and employers who receive federal funding. Private employers must comply with the standards set forth in the 1990 Americans with Disabilities Act, 42 U.S.C. 12111 et. seq. The Rehabilitation Act forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement. At the same time, Congress recognizes that employers have legitimate interests in performing the duties of their business adequately and efficiently. Employers cannot be obligated to employ persons who are incapable of performing the necessary duties of the job. Therefore, Congress has devised the following standards:

In order for an employee to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating (1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job. The plaintiff must make a prima facie showing that reasonable accommodation is possible. If the plaintiff is able to meet these burdens, the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer. The court considers several factors in making this determination.

In Shiring's case, no one disputes that he is a disabled person within the meaning of the Rehabilitation Act. Likewise, it is undisputed that he was terminated. The parties disagree, however, on whether Shiring was otherwise qualified to perform

the essential functions of his job.

One of the essential functions of a mail carrier is to physically deliver the mail to the people along the route. In his deposition, Shiring concedes that this was impossible for him to do. No amount of accommodation on the part of the Postal Service would have made this possible. Thus, Shiring was not otherwise qualified for the position of PTF letter carrier. See 29 C.F.R. 1614.203(a)(6)(qualified individual must be able to perform essential functions of the position); see also McDonald v. Commonwealth of Pennsylvania, 62 F.3d 92, 96 (3d Cir. 1995).

It is true that for a few months the Postal Service had Shiring casing mail for all eight routes, and doing no delivery at all, notwithstanding that delivery of mail is an essential element of the `letter carrier' position. The `casing' position to which he was temporarily assigned was not an official position, but had been created by the Postal Service to give Shiring something to do on a temporary basis. Therefore, Shiring's suggestion that he would have been qualified to perform the requirements of such a position does not help his case because under the Act employers are not required to create positions specifically for the handicapped employee. Fedro v. Reno, 21 F.3d 1391, 1395 (7th Cir. 1994)("...the Rehabilitation Act has never been interpreted to require an employer to createalternative employment opportunities for a handicapped employee..."). It follows that the district court did not err in refusing to consider the non-existent position of `caser' as an accommodation that would make Shiring qualified.

However, the district court did not consider Shiring's allegations that he requested transfers and reassignments to desk jobs within the Postal Service, and that his employers prevented him from receiving these reassignments. This was error; the court should have considered whether reassignments were a reasonable accommodation.

This was not always the case. Before 1992, disabled individuals had to prove that they were qualified only for the job that they were employed to do. "[Employers] are not required to find another job for an employee who is not qualified for the job he or she is doing." School Board of Nassau County v. Arline, 480 U.S. 273, 289, n.19 (1987). Although reassignment was an option under the 1990 Americans with Disabilities Act, see 42 U.S.C. 12111(9)(B)(reasonable accommodation may include reassignment to a vacant position), it was not required of federal employers under the Rehabilitation Act. However, in 1992, the Rehabilitation Act was amended to provide:

    Section 794. Nondiscrimination under Federal grants and
    programs.
    (d) Standards used in determining violation of section
        The standards used to determine whether this section
    has bee violated in a complaint alleging employment
    discrimination under this section shall be the standards
    applied under Title I of the Americans with Disabilities
    Act of 1990....
29 U.S.C. 794(d).

Pursuant to this amendment, the Code of Federal Regulations

was amended effective October 31, 1992 to provide that employers shall offer to reassign nonprobationary employees if those employees become unable to perform the essential functions of their jobs. The reassignment should be to an already funded, vacant position within the same commuting area, and at the same grade or level. 29 C.F.R. 1614.203(g). The use of the word "shall" indicates that this reassignment offer is mandatory, unless the reassignment would cause the agency undue hardship. Therefore, courts should consider whether reassignment is possible in determining whether an individual seeking relief under the Rehabilitation Act is an otherwise qualified individual.

However, the burden is on the employee to prove that he is an "otherwise qualified" individual. Buckingham v. United States, 998 F.2d 735, 739-40 (9th Cir. 1993). When the employee contends that he would be otherwise qualified with reasonable accommodation, it falls to the employee to make at least a facial showing that such accommodation is possible. Id. at 740. In this case, there is nothing in the record, beyond Shiring's vague allegations in his deposition, that any transfers were requested. Shiring would have to demonstrate that there were vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as PTF carrier. PTF carrier is the lowest seniority position in the Postal Service, and the Service is not required to promote Shiring to a higher level to accommodate his disability.

III.

In summary, the district court should have considered the option of reassignment before determining that Shiring was not otherwise qualified for employment within the United States Postal Service. However, its failure to do so is not cause for reversal, because it is harmless at most. Shiring's assertions in his deposition that there were jobs he wanted to transfer to are insufficient to meet his burden of demonstrating the presence of vacant, funded positions at his current level of seniority and pay, which he could perform. A plaintiff seeking relief under the Rehabilitation Act must demonstrate what reasonable accommodations he or she contends the employer should have made, including an identification of the positions the employer should have considered for reassignment. Because Shiring failed to do so, the trial court committed no reversible error.

Accordingly, the grant of summary judgment in favor of the Postal Service will be affirmed.