

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-11-1997

# Mengine v. Runyon

Precedential or Non-Precedential:

Docket 96-3287

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Mengine v. Runyon" (1997). *1997 Decisions.* Paper 128.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/128

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 11, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3287

MICHAEL A. MENGINE,
Appellant

v.

MARVIN RUNYON, POST MASTER GENERAL,
U.S. POSTAL SERVICE

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 93-cv-01674)

Argued March 10, 1997

Before: BECKER, SCIRICA and ALITO, Circuit Judges

(Filed June 11, 1997)

BRUCE A. BAGIN, ESQUIRE
 (ARGUED)
PAMELA E. BERGER, ESQUIRE
Wienand & Bagin
312 Boulevard of the Allies,
 Suite 700
Pittsburgh, Pennsylvania 15222

 Attorneys for Appellant

ALICE L. COVINGTON, ESQUIRE
 (ARGUED)
United States Postal Service
475 L'Enfant Plaza, S.W.
Washington, D.C. 20260-1136

 Attorney for Appellee

**OPINION OF THE COURT**

SCIRICA, <u>Circuit Judge</u>.

This appeal addresses the duty of federal employers under the "reasonable accommodation" requirement of the Rehabilitation Act of 1973, 29 U.S.C. § 701, <u>et seq.</u> We have held it is the burden of the disabled employee who seeks reassignment to identify a position appropriate for reassignment. <u>See Shiring v. Runyon</u>, 90 F.3d 827 (3d Cir. 1996). At the same time, we believe "reasonable accommodation" includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith. Because the employee, Michael Mengine, did not meet his burden and the employer, the United States Postal Service, satisfied its duty, we will affirm the district court's grant of summary judgment.

**I.**

Michael Mengine was employed by the United States Postal Service as a letter carrier. Following hip surgery for bilateral aseptic necrosis on November 23, 1992, Mengine could no longer carry out the duties of a letter carrier, which include prolonged walking and substantial lifting. As a result, Mengine received permission to take advanced sick leave (he had already exhausted his accrued sick leave).

On January 13, 1993, Mengine requested assignment to temporary light duty work. This was approved for a period of 30 days. The approval recited that Mengine may not push or pull, lift over 10 pounds, or engage in excessive standing or walking. Mengine was not assigned to a specific light duty job, but told he would get work "as assigned." Subsequently, Mengine received one two-hour light duty assignment which required him to sort mail. Mengine then took advanced sick leave when no further light duty assignments were offered to him.

On January 27, 1993, Mengine wrote to Postmaster William Dunn that he was "physically unable to continue" as a letter carrier. He requested "a transfer into another

craft," noting that he was "on advance sick leave and would like to return to full-time work as soon as possible." He attached a letter from his doctor stating he must avoid prolonged walking and heavy lifting.

On February 2, 1993, Thomas Schimmel, the Senior Personnel Services Specialist, responded to Mengine's letter on behalf of the Postmaster, sending him descriptions of four vacant positions: mail handler, mail processor, laborer-custodian, and custodian. Mengine wrote back that, "[a]lthough I am ready, willing, and able to accept a transfer into another category, I do not feel that these particular job descriptions best suit my physical limitations." He requested information on other positions which would accommodate him and inquired about a computer maintenance training program.

Schimmel responded that there were no positions available (other than the four mentioned above) that would accommodate Mengine's disability. He also stated that the Postal Service had no training program in computer maintenance: "We do have . . . positions [which] maintain our computer hardware and software relating to our automation equipment. However your limitations would prevent you from working in this area." The letter concluded with, "The only suggestion that I have for you at this time is that you might want to pursue, if eligible, Disability Retirement."

On April 20, 1993, Mengine wrote again to the Postmaster and requested a transfer to a "desk job," or, in the alternative, reassignment to another federal agency. Once again, Schimmel responded on behalf of the Postmaster, stating, "In order for you to transfer to another government agency you must contact that agency and they will have to provide you the necessary requirements to transfer."

Meanwhile, Mengine visited the Postal Service Human Resources Office and reviewed a list of job descriptions. He identified several positions that he believed would accommodate his limitations, but he was told none of these positions were vacant.

3

Mengine then applied for Social Security benefits claiming total disability. On September 28, 1993, the Social Security Administration approved his application. Two days later, Mengine applied for disability retirement under the Federal Employees' Retirement System, stating, "As a Letter Carrier, the requirements of my job are standing, walking, and lifting which I [no] longer can do without great difficulty and pain and without causing further damage to my hips." The Office of Personnel Management initially denied his application but on appeal found him eligible for disability retirement.

In October 1993, Mengine filed this lawsuit against Marvin Runyon, Postmaster General of the United States Postal Service, claiming violations of the Rehabilitation Act. Specifically, he contends the Postal Service did not reasonably accommodate his disability because it refused to reassign him to another position. The district court dismissed Mengine's case for failing to timely exhaust administrative remedies, but the dismissal was reversed on appeal. Mengine v. Runyon, No. 94-3298 (3d Cir, Dec. 8, 1994).

The case was remanded and discovery ensued. In September 1995, William F. Greb, a Postal Service manager, testified at his deposition that temporary light duty work was available for Mengine in "collections." The work required driving a truck and picking up mail from office buildings. Mengine took the job for an indeterminate period. It appears he has since stopped working and once again accepted disability retirement.[1]

After discovery, the parties filed cross motions for summary judgment. On April 26, 1996, the district court granted summary judgment to the Postal Service because Mengine failed to identify a permanent, vacant, funded position appropriate for his reassignment.

_____

1. Mengine contends that after returning to work in September 1995, he contacted the Social Security Office to terminate his benefits.

4

## II.

This case arises under the Rehabilitation Act. The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review summary judgment decisions under a plenary standard. See Waldron v. SL Indus., Inc., 56 F.3d 491, 496 (3d Cir. 1995). We must apply the same test as the district court, i.e. we must view the evidence in the light most favorable to the nonmovant, and we may affirm only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Waldron, 56 F.3d at 496.

## III.

The Rehabilitation Act of 1973, 29 U.S.C. § 701, et. seq., forbids federal employers from discriminating against persons with disabilities in matters of hiring, placement or advancement. See Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996). In order for an employee to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating: "(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." Id. at 831.2

Defendants moved for summary judgment based on their contention that Mengine could not prove he was an "otherwise qualified" employee. In response, Mengine admits he can no longer perform the job of letter carrier, but contends the Postal Service had a duty to reasonably accommodate him through reassignment to a different position.

An employer is not required to create a job for a disabled employee. But a federal employer has a duty to reassign

_____

2. The Rehabilitation Act of 1973 is applicable only to federal employers, such as the Postal Service, and employers who receive federal funding. See Shiring, 90 F.3d at 830.

5

nonprobationary employees if they become unable to perform the essential functions of their jobs, unless the reassignment would cause the employer undue hardship. See Shiring, 90 F.3d at 832. In bringing suit, it is Mengine's burden to "make at least a facial showing that such accommodation [reassignment] is possible." Id. Specifically, Mengine must "demonstrate that there were vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as [his former job]." Id.

Mengine maintains he satisfied his burden to identify a vacant, funded position by requesting transfer to a light duty position. In the alternative, he contends any failure on his part to identify such a position was caused by the Postal Service's refusal to cooperate.

**a.**

Mengine contends he satisfied his burden because he presented proof of the availability of light duty work. But the only light duty work available was temporary work. It is uncontested that Mengine was seeking permanent work. The Postal Service was not required to transform its temporary light duty jobs into permanent jobs to accommodate Mengine's disability. See Shiring, 90 F.3d at 831. As we have noted, an employer is not required to create a job for a disabled employee. At the same time, we are reluctant to adopt a per se rule that the conversion of a temporary job to a permanent job can never constitute a "reasonable accommodation" under the Rehabilitation Act. We think that in most cases the imposition of such a requirement will be unreasonable, but there might arise the rare case in which the cost of converting the temporary job into a permanent one is slight and the benefits considerable. Cf. Vande Zande v. State of Wisconsin Dept. of Admin., 44 F.3d 538, 542-43 (7th Cir. 1995). In this case, however, Mengine has not pointed to evidence from which a reasonable factfinder could conclude the costs of converting the temporary jobs at issue into permanent ones would have been so slight in relation to the benefits so as to make the conversion reasonable. In any event, Mengine

6

did not identify any available permanent jobs which he was capable of performing. He did not meet his burden under Shiring.

**b.**

Mengine also contends that any failure on his part to identify a vacant, funded position is the fault of the Postal Service, because it failed to cooperate with his efforts to investigate job descriptions and job vacancies. The district court rejected this contention, holding that federal employers do not have a duty to find other jobs for disabled employees.[3] Soon after the district court's opinion, we made clear in Shiring, 90 F.3d at 832, that an employer has a duty to reassign a disabled employee if an already funded, vacant position at the same level exists. But "it falls to the employee to make at least a facial showing" that there were vacant, funded positions whose essential functions he was capable of performing. Id. Notwithstanding his burden, Mengine maintains a federal employer has a duty to aid the employee in his investigation.

The Court of Appeals for the Seventh Circuit addressed a similar issue in Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130 (7th Cir. 1996). Lorraine Beck was the secretary to the Dean of the School of Nursing at the University of Wisconsin-Milwaukee. She became severely depressed from job stress and had to take periodic leaves of absence. Beck's employer tried reassigning her to a less stressful position, and even tried to obtain more information from her doctor so that her needs could be satisfied, but Beck continued to suffer from depression. After her third leave of absence, Beck gave the University a

_____

3. Mengine correctly notes that School Bd. of Nassau County. Fla. v. Arline, 480 U.S. 273 (1987), cited by the district court, no longer provides the applicable standard. Arline predates the 1992 amendments to the Rehabilitation Act, which substantially changed the standards used in determining whether the Act is violated. See Shiring, 90 F.3d at 831-32 (stating that under Arline employers were not required to reassign disabled employees, but that after the 1992 amendments reassignment is mandatory unless it would cause the agency undue hardship).

letter from her doctor requesting "appropriate assistance with her work load," an "adjustable computer keyboard," and the tailoring of "her work load to what she & your staff feel she can realistically accomplish." The University moved Beck's desk and substantially decreased her work load, but she remained depressed. After Beck went on medical leave, she filed suit under Title I of the Americans with Disabilities Act ("ADA") for failing to reasonably accommodate her disability. The district court granted summary judgment to defendants.

On appeal, the court of appeals discussed the duty of Beck's employer to reasonably accommodate her disability, holding, "The employer has at least some responsibility in determining the necessary accommodation. . . . [T]he regulations envision an interactive process that requires participation by both parties." Id. at 1135. The court was referring to the federal regulations implementing the ADA, which provide in part:

To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3)(1995).

[T]he employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.

29 C.F.R. pt. 1630, App. at 351 (1996); see Beck, 75 F.3d at 1135. The court of appeals concluded that both employer and employee must "make reasonable efforts" to help determine "what specific accommodations are necessary." Beck, 75 F.3d at 1135. Because the employer in Beck made good faith efforts to communicate with Beck and to

8

accommodate her disability, the court affirmed summary judgment for defendants.

Although Beck discussed this issue in the context of the ADA, it is relevant to our analysis of the Rehabilitation Act because in 1992 the Rehabilitation Act was amended to incorporate the standards of several sections of the ADA, including the section defining "reasonable accommodation."[4] 29 U.S.C. § 794(d); see also Shiring, 90 F.3d at 831-32.

We agree that both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith. In order to satisfy the requirements of the Rehabilitation Act, the Postal Service had the duty to make reasonable efforts to assist Mengine, to communicate with him in good faith, and to not impede his investigation. See Beck, 75 F.3d at 1135 ("A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith."); see also Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1012 (7th Cir. 1997) ("[D]etermining what specific actions should be taken by an employer requires an interactive process involving participation by both sides."); Taylor v. Principal Financial Group, Inc., 93 F.3d 155, 165 (5th Cir. 1996) (The "employee's initial request for an accommodation . . . triggers the employer's obligation to participate in the interactive process . . . ."), cert. denied, 117 S. Ct. 586 (1996).

As we held in Shiring, the employee has the duty to identify a vacant, funded position whose essential functions he is capable of performing. Shiring, 90 F.3d at 832. But we

_____

4. The Rehabilitation Act now provides:

The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d).

9

do not suggest that the employee has the burden of identifying an open position before the employer's duty of accommodation is triggered. In many cases, an employee will not have the ability or resources to identify a vacant position absent participation by the employer. Simply put, a disabled employee seeking reassignment will be best served by employer and employee working together to identify suitable positions.

When the interactive process works well, it furthers the purposes of the Rehabilitation Act and the ADA. The employers will not always know what kind of work the worker with the disability can do, and conversely, the worker may not be aware of the range of available employment opportunities, especially in a large company. Thus, the interactive process may often lead to the identification of a suitable position. If it turns out there is no job which the worker (with or without accommodation) is capable of performing, then the company cannot be held liable for an ADA or Rehabilitation Act violation. See Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997) ("[W]here a plaintiff cannot demonstrate `reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant. . . . The ADA, as far as we are aware, is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made."). To the extent there is any tension between Beck and Willis it may be more a matter of timing; at all events, if reasonable accommodation is impossible, nothing more than communication to the employee of this fact is required. Nonetheless, if an employer fails to engage in the interactive process, it may not discover a way in which the employee's disability could have been reasonably accommodated, thereby risking violation of the Rehabilitation Act.

Mengine contends the Postal Service impeded his search for a vacant, funded position. For example, when he reviewed job descriptions at the Postal Service Human Resources Office, he was not permitted to photocopy job descriptions of unavailable positions. He also points to the February 18, 1993 letter from Schimmel which concludes

10

with, "The only suggestion that I have for you at this time is that you might want to pursue, if eligible, Disability Retirement." But this evidence is not indicative of bad faith. Mengine and the Postal Service engaged in the interactive process contemplated by the federal regulations. The uncontradicted evidence shows the parties exchanged many letters in their mutual attempt to identify a vacant, funded position for reassignment. The Postal Service sent Mengine multiple job descriptions of vacant positions in an effort to meet his needs. The additional job descriptions Mengine wanted to photocopy were not vacant positions and therefore could not have aided his search. The Postal Service made reasonable efforts to assist Mengine, communicated with him in good faith, and did not act to impede his investigation. See Beck, 75 F.3d at 1137 ("[W]here, as here, the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed, ADA liability simply does not follow.").

**IV.**

Because no reasonable jury could find the Postal Service violated its duty here, we will affirm the judgment of the district court.5

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

_____

5. In its brief, the Postal Service contended Mengine may be estopped from claiming ability to work with reasonable accommodation because he asserted total disability to the Social Security Administration. <u>See</u> <u>McNemar v. Disney Stores</u>, 91 F.3d 610 (3d Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 958 (1997). But at oral argument, the Postal Service stated it did not wish to pursue this argument.

10