MEMORANDUM
 

 LOWELL A REED, Jr., Senior District Judge.
 

 Presently before the Court is the motion of defendant, Penn-Del Directory Company (“Penn-Del”), for reconsideration (Document No. 17) and the response, reply and sur-reply thereto. For the reasons set forth below, the motion will be denied.
 

 I. Background
 

 Plaintiff James R. Dayoub (“Dayoub”) brought this lawsuit alleging that he is disabled and that his employer failed to accommodate his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (“ADA”). This Court denied the motion of Penn-Del for summary judgment, holding that Dayoub was not estopped from bringing this suit by virtue of his earlier application for Social Security Disability Income (“SSDI”) benefits and that genuine issues of material fact precluded the grant of summary judgment.
 

 II. Standard
 

 Penn-Del has moved for reconsideration of this Court’s denial of Penn-Del’s motion for summary judgment. The usual vehicle for a motion for reconsideration is Federal Rule of Civil Procedure 59(e) or 60(b). Indeed, Penn-Del argues the motion as if it were under Rule 59(e), even going so far as to concede that the motion is untimely. However, neither Rule 59(e) nor 60(b) applies because the order Penn-Del seeks to have reconsidered is not a final judgment or order but rather an interlocutory decision.
 
 See Davidson v. United States,
 
 1998 WL 314706, at *2 (E.D.Pa. June 15, 1998) (denial of partial motion for summary judgment is not a final judgment, order, or proceeding within Rule 60(b) but rather an interlocutory decision); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civ.3d § 2715 at 264 (West 1998) (“the denial of a Rule 56 motion is an interlocutory order from which no appeal [to the court of appeals] is available until the entry of judgment following the trial on the merits”).
 

 A federal district court has the inherent power to reconsider interlocutory orders “ ‘when it is consonant with justice to do so.’ ”
 
 Walker by Walker v. Pearl S. Buck Foundation, Inc.,
 
 1996 WL 706714, at *2 (E.D.Pa. Dec.3, 1996) (quoting
 
 United States v. Jerry,
 
 487 F.2d 600, 605 (3d Cir.1973)). “ ‘[T]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.’ ”
 
 Confer v. Custom Eng’r Co. Employee Health Benefit Plan,
 
 760 F.Supp. 75, 77 (W.D.Pa.) (quoting
 
 Harsco Corp. v. Zlotnicki,
 
 779 F.2d 906, 909 (3d Cir.1985)),
 
 affd in part on other grounds and dismissed in part on other grounds,
 
 952 F.2d 41 (3d Cir.1991);
 
 see also Taylor v. Sterling Winthrop,
 
 1995 WL 752446, at
 
 *2
 
 (E.D.Pa. Dec.18, 1995). Because of the interest in finality, however, courts should grant motions for reconsideration sparingly.
 
 Rottmund v. Continental Assurance Co.,
 
 813 F.Supp. 1104, 1107 (E.D.Pa.1992).
 
 [1]
 

 
 *638
 
 III. Discussion
 

 Penn-Dell first argues that there has been an intervening change in controlling case law from the United States Supreme Court as well as the Court of Appeals for the Third Circuit which compels this Court to grant summary judgment.
 
 See Cleveland v. Policy Management Sys., Corp.,
 
 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999);
 
 Motley v. New Jersey State Police,
 
 196 F.3d 160 (3d Cir.1999). In so doing, Penn-Del reasserts that Dayoub is estopped from bringing this suit. In light of the intervening case law, however, Penn-Del now argues that Dayoub is es-topped from bringing this suit because he has not provided a “sufficient explanation” of how his representation of total disability to the Social Security Administration (“SSA”) can be reconciled with his contention that he can perform the “essential functions” of his job, with or without accommodation.
 

 In
 
 Cleveland,
 
 the Supreme Court held that a claim for SSDI benefits is not inherently in conflict with a claim under the ADA and that no “special negative presumption” should apply where an ADA plaintiff has applied for- and received SSDI benefits. 119 S.Ct. at 1602. The Court first noted a significant difference between the two statutory schemes: whereas under the ADA a qualified individual includes a disabled person who can perform the essential functions of her job “with reasonable accommodations,” the Social Security Administration does not take into account the possibility of reasonable accommodations. “The result is that an ADA -suit claiming that the plaintiff can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) without it.”
 
 Id.
 
 The Court further noted that because a determination of SSDI benefits is made pursuant to a five-step procedure which embodies a set of presumptions about disabilities, an individual may qualify for SSDI under the SSA administrative rules and yet, due to special circumstances, remain capable of “performing the essential functions” of his or her job.
 
 Id.
 
 at 1602-03. Finally, “if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system.”
 
 Id.
 
 at 1603. In sum, the Supreme Court recognized, on the one hand, that there is no presumption against recovery where an ADA also applied for disability benefits but also that “in some cases an earlier SSDI claim may turn out genuinely to conflict with an ADA claim” and that the ADA plaintiff must resolve the contradiction.
 
 Id.
 

 In
 
 Motley,
 
 the Court of Appeals for the Third Circuit held that a plaintiff who had made .specific statements about his physical injuries and how they prevented him from doing his job in support of his claim to the SSA that he was totally disabled had not sufficiently reconciled his claim for total disability with his claim that he could perform the essential functions of his job. The Court of Appeals first reasoned that every ADA plaintiff could reconcile a claim for SSDI with his or her ADA claim by merely pointing to the fact that SSDI does not consider the effect that reasonable accommodations have on the plaintiffs ability to work, then summary judgment could never be granted on the basis of judicial estoppel where an ADA plaintiff had applied for SSDI benefits. However, because the Supreme Court recognized that summary judgment would be appropriate in some cases, the Court of Appeals further reasoned that the “plaintiff must, in certain circumstances, provide some additional rationale to explain the plaintiffs apparent about-face concerning the extent of the injuries.”
 
 Motley,
 
 196 F.3d at 165.
 
 *639
 
 The Court of Appeals then explained that the additional justification could entail a discussion of how, under the facts of the plaintiffs case, the differing statutory context makes his or her statements under one scheme reconcilable with claims made under the other.
 
 Id.
 

 In
 
 Motley,
 
 the plaintiff made more than a general allegation of disability to the SSA, offering instead a detailed description of this injuries and their impact on his ability to work. The Court of Appeals reasoned that the difference in the statutory schemes alone could not serve to reconcile the factual contradictions between the plaintiffs statements supporting his claim of total disability with his assertion that he could perform the essential functions of his job as a state trooper. 196 F.3d at 166-67. Accordingly, the Court of Appeals concluded that the plaintiff, who chose to rely solely upon the differences in the statutory schemes, failed to present a sufficient explanation to reconcile his inconsistent statements.
 
 Id.
 
 at 166.
 

 Although both the Supreme Court and the Court of Appeals for the Third Circuit have recently spoken about the effect of a prior claim for SSDI disability benefits and an ADA claim, neither case compels the result urged by the Penn-Del. In contrast to the situation in
 
 Motley,
 
 the record is silent as to the representations that Dayoub made in connection with his SSDI claim (other than he was totally disabled with respect to his District Sales Manager job). Thus, this case does not present the type of factual contradictions that were present in
 
 Motley.
 

 Moreover, throughout this litigation Dayoub has consistently maintained that he was totally disabled from doing his job as a District Sales Manager. Dayoub has argued that the reasonable accommodation he sought was to fill a vacant position for which he was qualified. His statement that he was totally disabled for purposes of SSDI is therefore not inherently inconsistent with his claim for relief under the ADA or an “apparent about-face concerning the extent of his injuries.”
 
 Motley,
 
 196 F.3d at 165. Thus, this is not one of those cases in which the earlier SSDI claim genuinely conflicts with a later ADA claim, requiring “some additional rationale” to reconcile Dayoub’s claims under the two schemes.
 
 Motley,
 
 196 F.3d at 165;
 
 see also Cleveland,
 
 119 S.Ct. at 1603.
 

 Finally, Dayoub’s claim for SSDI benefits was denied. As the Supreme Court stated: “if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system.”
 
 Cleveland,
 
 119 S.Ct. at 1603. Again, I note that the record does not contain factual contradictions between any representations made by Dayoub in connection with his claim for disability benefits and representations made in connection with this lawsuit. In sum, I find that Dayoub has adequately explained how his claim for disability can be reconciled with his suit under the ADA.
 

 Penn-Del next strenuously reiterates its argument that Dayoub has failed to show that he could perform the essential functions of the positions he sought as an accommodation; namely as a sales representative or trainer. First and foremost, a motion for reconsideration is “not an opportunity for a party to re-litigate already decided issues or to present previously available evidence.”
 
 Corrigan v. Methodist Hosp.,
 
 885 F.Supp. 127, 127 (E.D.Pa.1995). Moreover, in
 
 Taylor v. Phoenixville School District,
 
 184 F.3d 296, 317-18 (3d Cir.1999), the Court of Appeals explicitly held, that where, as here, there is a genuine issue of material fact as to whether the defendant engaged in the interactive process, summary judgement is inappropriate.
 

 In
 
 Taylor,
 
 the “critical issue [was] whether [the plaintiff] could, with reasonable accommodations, perform the essential functions of her job following her return from her hospitalization.” 184 F.3d at 311. In
 
 Taylor,
 
 as here, the plaintiff
 
 *640
 
 suffered from a mental impairment which substantially limited her ability to think. Additionally, the plaintiff had requested an accommodation that was not feasible and the defendant argued that there was no other accommodation which would have made the plaintiff capable of performing the essential functions of her job.
 
 Id.
 
 at 317.
 

 In addressing the “critical issue” before it, the Court of Appeals discussed at length the requirements of the interactive process, concluding that “where there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded.”
 
 Taylor,
 
 184 F.3d at 318. The Court" of Appeals explained that although “ ‘[t]he ADA ... is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee’s disability could reasonably have been made,’ ” nevertheless, “[wjhen an employee has evidence that the employer did not act in good faith in the interactive process, ... we will not readily decide on summary judgment that accommodation was not possible and the employer’s bad faith could have no effect.”
 
 Id.
 
 at 318 (quoting
 
 Mengine v. Runyon,
 
 114 F.3d 415, 420 (3d Cir.1997)). The Court reasoned that “[t]o assume that accommodation would fail regardless of the employer’s bad faith would effectively eliminate the requirement that employers must participate in the interactive process.”
 
 Id.
 
 The Court of Appeals further cautioned that where the disability involved is one that is heavily stigmatized in our society, such as a mental disability, courts should be especially wary on summary judgment of underestimating how well an employee might perform with accommodations or how much the employer’s bad faith may have hindered the process of finding accommodations.
 
 Id.
 

 Here, there is evidence that Penn-Del initially told Dayoub that he could only return to his job as a District Sales Manager at “100%” and later reiterated that he could only return to his former position “at full capacity.”- Insisting that an employee, who requests an accommodation of reassignment, return to work to his former position at “full capacity” is wholly inconsistent with an employer’s obligation to engage in the interactive process. Penn-Del nevertheless asserts that its participation in the interactive process is documented by the numerous calls that it made to check on the status of Dayoub’s health. The fact that Penn-Del communicated with Dayoub, however, is not indicative of its having engaged in the interactive process. The interactive process seeks to establish what, if any, accommodation can be made for a disabled employee. Merely communicating with an employee about his disability status does not necessarily serve to further any of the goals of the interactive process if the employer has already established that the employee can only return to his former position and only once he can perform at “full capacity.” If the understanding is that the employee can only return to his former position “full capacity,” the employee might understandably explain why he cannot yet return to his former job at full capacity as opposed to furthering the employer’s understanding as to what the employee is capable of doing,
 
 even if
 
 the employee might be well enough to perform the essential functions of the job or another job.
 

 In the end, a jury may well believe that Penn-Del did engage in the interactive process, speaking with Dayoub’s doctor and ultimately reaching the conclusion that he could not perform the essential functions of any other available position. However, there is evidence from which a reasonable juror could conclude that Penn-Del did not engage in the interactive process in good faith, creating a genuine issue of material fact which cannot be resolved at summary judgment.
 
 [2]
 
 A reasonable jury
 
 *641
 
 could also conclude that Dayoub would have been able to perform the essential functions of other jobs, with or without accommodations, because “[i]n making that determination, the jury is entitled to bear in mind that had the employer participated in good faith, there may have been other, unmentioned possible accommodations.”
 
 Taylor,
 
 184 F.3d at 317-18. This is especially true where the disability involved is a mental disability and where subtle differences in job responsibilities — although the same or similar on paper as between two jobs — could spell the difference between the ability to perform the essential functions of the position and the inability to do so.
 
 Id.
 
 at 319 (“it is worth remembering that sometimes comparatively modest accommodations can reap large returns in how well a disabled employee performs”). Thus, although the Court is not sanguine that Dayoub will carry his ultimate burden at trial, the Court cannot find as a matter of law that accommodation was impossible.
 
 [3]
 

 Finally, Penn-Del argues that shortly after this Court denied its motion for summary judgment, the Court of Appeals for the Third Circuit established a limited defense to an ADA “regarded as” claim and that summary judgment should be granted because the defense is applicable here.
 
 Taylor v. Pathmark Stores, Inc.,
 
 177 F.3d 180, 192-94 (3d Cir.1999). In
 
 Pathmark,
 
 the Court of Appeals reaffirmed that an employer is liable under the ADA for mistakenly regarding an employee as dis
 
 *642
 
 abled. However, the Court of Appeals articulated a limited defense available in cases which do not involve stereotyping and prejudice and where the employer educates itself about the varying nature of impairments and makes an individualized determination about the affected employee. Thus, “[i]f an employer regards a plaintiff as disabled based on a mistake in an individualized determination of the employee’s actual condition rather than on a belief about the effects of the kind of impairment the employer regarded the employee as having, then the employer will have a defense if the employee unreasonably failed to inform the employer of the actual situation.”
 
 Pathmark,
 
 177 F.3d at 193.
 

 Penn-Del argues that to the extent that its perception of Dayoub’s impairment— that Dayoub could not perform the essential functions of either of the positions he sought as an accommodation — was mistaken, Dayoub’s doctor was responsible for the mistake and, therefore, it is not liable. Initially, I note that Dayoub has not brought a “regarded as” claim against Penn-Del. Thus, it is not clear that the limited defense to a “regarded as” claim is applicable. Nevertheless,- even if it were appropriate for Penn-Del to raise the limited defense of mistake, it cannot take advantage of it.
 

 The limited defense to a “regarded as” claim has an important condition — that “the employee unreasonably failed to inform the employer of the actual situation.”
 
 Pathmark,
 
 177 F.3d at 193. In determining whether an employee “unreasonably failed to inform the employer of the actual situation,” the Court of Appeals explained that “[rjeasonability is a fact-specific test, and, of coursé, the employee must have reason to know of the basis of the employer’s decision before he can unreasonably fail to correct a mistake.”
 
 Id.
 
 The Court of Appeals reasoned that this qualification on the limited ■ defense “will encourage communication between employer and employee, in the same way that the interactive process for determining reasonable accommodations does.”
 
 Id.
 
 at 194.
 

 Here, Penn-Del argues that it had information about Dayoub from forms Dayoub’s doctor, Dr. Infante, filled out and sent to Dayoub’s disability insurance carrier, UNUM. Penn-Del admits that it never spoke to either Dayoub or Infante about the contents of the forms although Penn-Del now asserts that its conclusion that Dayoub was unfit for any job at Penn-Del was based upon the contents of the forms. Indeed, Penn-Del argues that it was not necessary to discuss the severity of Dayoub’s impairment because the forms speak for themselves — despite the fact that Dr. Infante informed Penn-Del that she believed Dayoub could and should return to work in some other capacity. Missing from Penn-Del’s argument is evidence that Dayoub had reason to know that Penn-Del based its assessment of his condition upon forms his doctor filled out for the disability insurer. Without knowing the basis for Penn-Del’s decision, Dayoub cannot be found to have “unreasonably” failed to correct Penn-Del’s mistaken belief as to the extent of his impairment, or more importantly, his ability to perform the essential functions of other vacant positions for which he was qualified.
 
 [4]
 
 Therefore, even if it were appropriate to apply the limited defense to a “regarded as” claim outside the context of a “regard as” claim, Penn-Del cannot rely upon it here.
 

 IV. Conclusion
 

 Based upon the foregoing analysis, the motion for reconsideration will be denied. An appropriate Order follows.
 

 
 *643
 

 ORDER
 

 AND NOW this 22nd day of March, 2000, upon consideration of the motion of the defendant Penn-Del Directory Company for reconsideration (Document No. 12), the response of plaintiff James R. Dayoub, and the reply and sur-reply thereto, it is hereby ORDERED that the motion is DENIED.
 

 IT IS FURTHER ORDERED that the parties shall submit a joint report to the Court no later than April 24, 2000, as to the status of settlement. If the parties need the assistance of the Court in facilitating settlement negotiations, the parties shall so indicate. By said date, plaintiff shall contact the Deputy Clerk to arrange a date for a final scheduling conference.
 

 [1]
 

 . Because the court retains jurisdiction to modify any earlier order until the court finally adjudicates all claims as to all parties, the timeliness issue is not a jurisdictional bar to considering the motion of Penn-Del.
 
 Confer,
 
 760 F.Supp. at 77;
 
 see also,
 
 Fed.R.Civ.Pro.
 
 *638
 
 54, 59(e) & 60(b);
 
 Adams v. Trustees of the New Jersey Brewery Employees' Pension Trust Fund, 29
 
 F.3d 863, 870 (3d Cir.1994) (the ten-day period of Rule 59(e) is jurisdictional, and cannot be extended in the discretion of the district court).
 

 [2]
 

 . As noted in the memorandum denying the motion for summary judgment, there are genuine issues of material fact regarding the extent and substance of communications be
 
 *641
 
 tween Penn-Del and Dr. Infante. According to Penn-Del, it acted in good faith and reasonably engaged in the interactive process, speaking with Dr. Infante and determining with her assistance that a sales or sales training position (or any other position for that matter) would be inappropriate for Dayoub. Dr. Infante, however, denies that such conversations took place. Penn-Del queries how Infante could clear Dayoub to work, knowing nothing about the jobs she was recommending Dayoub was capable of performing. In-fante did, however, discussed the possibility of returning to work in a different capacity with Dayoub and the Court notes that in the course of his executive training, Dayoub held various positions, including a sales coach and as a personnel and training manager. Thus, it can reasonably be inferred that Dayoub knew what the requirements of these positions were and discussed them with his doctor.
 

 [3]
 

 . I recognize that in
 
 Donahue v. Consolidated Rail Corporation,
 
 52 F.Supp.2d. 476, 483-84 (E.D.Pa.1999), the district court was confronted with the apparent tension between the requirements of the interactive process and the plaintiffs burden of demonstrating that he can perform the essential functions of the position he sought as an accommodation. In
 
 Donahue,
 
 the district court held that because the plaintiff had not put forth any evidence from which a reasonable jury could find that the plaintiff could have reasonably accommodated the plaintiff and because the employer successfully refuted each proposed transfer position, summary judgment was appropriate despite an inference that the employer did not engage in the interactive process in good faith. 52 F.Supp.2d at 484. Initially, I note that the district court appears to have relied upon a quote from an Eleventh Circuit case included in an earlier Third Circuit case as a
 
 parenthetical,
 
 but not quoted in full again by the Court of Appeals in
 
 Taylor. See Donahue, 52
 
 F.Supp.2d. at 483 (noting that in
 
 Mengine v. Runyon,
 
 114 F.3d 415, 420 (3d Cir.1997) the Court of Appeals quoted from
 
 Willis v. Conopco, Inc.,
 
 108 F.3d 282, 285 (11th Cir. 1997)). In addition,
 
 Donahue
 
 can be distinguished on its facts. In
 
 Donahue,
 
 the plaintiff suffered from a physical limitation which clearly precluded him from other positions, even "other, unmentioned possible accommodations.”
 
 Donahue,
 
 52 F.Supp.2d at 483. Thus,
 
 Donahue
 
 represents the rare fact pattern upon which a court could find that no reasonable accommodation was possible despite a lack of good faith on the part of the employer in engaging in the interactive process. Here, in contrast, there is not merely the inference of a lack of good faith, but a genuine issue of material fact as to whether Penn-Del engaged in the interactive process in good faith. Moreover, this Court cannot, without making an improper credibility determination, conclude that there is no evidence that Dayoub could not perform the essential functions of other positions for which he was qualified, his mental limitations notwithstanding.
 
 See Taylor,
 
 184 F.3d at 317-18 (evidence that employer did not engage in interactive process in good faith precluded summary judgment where plaintiff’s ability to think was both directly and indirectly impaired by disability and requested accommodation was not feasible).
 

 [4]
 

 . This is not to say that Infante’s contemporaneous records of Dayoub’s condition are not relevant or that Penn-Del should not have relied upon them. The error Penn-Del made was failing to discuss its concerns, and the basis for its concern, with either Dayoub or Infante.