

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-2002

# Shapiro v. Lakewood

Precedential or Non-Precedential: Precedential

Docket No. 01-3212

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Shapiro v. Lakewood" (2002). *2002 Decisions.* Paper 311.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/311

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed May 29, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3212

HOWARD SHAPIRO,
        Appellant

v.

TOWNSHIP OF LAKEWOOD; FRANK EDWARDS; GAR
WOODFIELD; and JOHN DOES 1 to 5

ON APPEAL FROM
THE DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
(Dist. Court No. 99-cv-03089)
District Court Judge: Mary Little Cooper

Argued on March 4, 2002

Before: ALITO, RENDELL, and HALL,* Circuit Jud ges.

(Filed: May 29, 2002)

_____

* The Honorable Cynthia Holcomb Hall, Circuit Judge for the Ninth
        Circuit, sitting by designation.

        JOHN P. BRENNAN, JR. (Argued)
        912 Wall Road
        Spring Lake Heights, NJ 07762

        Counsel for Appellant

        ROBERT D. FORD (Argued)
        Russo, Secare, Ford, Delanoy &
         Martino
        616 Washington Street
        Toms River, NJ 08753

        Counsel for Appellee

OPINION OF THE COURT

ALITO, Circuit Judge:

Howard Shapiro became disabled during the course of
his employment with the Township of Lakewood
("Lakewood" or the "Township"). When he requested a
"reasonable accommodation," Lakewood refused to transfer
him unless he followed the standard procedure for
interdepartmental transfers -- which apparently consisted
of going to the municipal building and looking at
announcements posted on a bulletin board. Shapiro

subsequently filed this action, claiming, among other things, that Lakewood had violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. S 12101 et seq. Shapiro argued that by requesting a reasonable accommodation, he had initiated an "interactive process" in which Lakewood was required to engage. Although Shapiro identified several positions that were vacant during the period in question and that he could have filled, the District Court granted summary judgment for the Township because Shapiro had not formally applied for those positions. We hold that because Shapiro requested accommodation and because he identified positions into which he could have been transferred -- namely, positions as a police dispatcher -- summary judgment in favor of the Township was not proper. Accordingly, we reverse the District Court's order granting Lakewood's motion for

2

summary judgment and remand the case for further proceedings.

I.

Howard Shapiro was employed by the Township of Lakewood for 15 years, first as a police dispatcher and later as an Emergency Medical Technician ("EMT"). On July 27, 1997, during the course of his employment as an EMT, Shapiro injured his back while lifting an elderly patient. Shapiro's consultations with a physician revealed that he had a herniated disc at L5-S1 and a bulging disc at L4-L5. He continued to work on light duty in the Emergency Medical Services department ("EMS") until October 9, 1997, when he was placed on out-of-work workers' compensation temporary disability for one month. Eventually, Shapiro was released from out-of-work status to "restrictive duty" with the limitation that he could not crawl, crouch, squat, or lift more than 25 pounds. He never resumed active duty as an EMT, however, and at the time of this litigation, he remained an unpaid employee of Lakewood on out-of-work status. As the result of successful claims for workers' compensation, Shapiro received medical and temporary benefits in the sums of $29,136 in December 1998 and $14,384 in November 1999.

After becoming disabled, Shapiro made repeated requests for accommodations that would enable him to continue working for Lakewood either in a light duty capacity with EMS or in another position. Shapiro asserts that in August 1997 he informed his supervisor that he was disabled and sought "reasonable accommodation." On January 8, 1998, Shapiro's counsel sent a letter to Lakewood's Municipal Manager, Frank Edwards, demanding "reasonable accommodation." On April 30, 1999, Shapiro's counsel again wrote to Edwards. This letter stated: "Please consider this a formal demand that Lakewood Township return Mr. Shapiro to work immediately and make reasonable accommodations for the prescribed limitations. In considering this, please be mindful that Mr. Shapiro is a

very talented individual who is not only a licensed EMT, but also a licensed electrician and expansively computer competent." Letter to Frank Edwards, April 30, 1999, in

App. III at A256. On March 13, 2000, Shapiro's counsel wrote to Lakewood's attorney, asking what types of training Shapiro should pursue for Lakewood to provide him with reasonable accommodation. In addition, Shapiro made three other inquiries by letter to Lakewood requesting information regarding available positions that would accommodate him. Lakewood either ignored Shapiro or told him that it could not give advice regarding what training he should pursue. On one occasion, Shapiro was advised to "go to Town Hall and fill out a job application." Distr. Ct. Memo. at 4, in App. I at A4. At no time did Lakewood contact Shapiro to discuss how it might accommodate him.

Shapiro has identified the position of police dispatcher as a vacant one that he was qualified to perform. From the time that Shapiro first requested accommodation to the initiation of legal action, Lakewood hired at least five dispatchers. Lakewood's "policy" regarding such an interdepartmental transfer to a non-competitive, vacant position is to post each opening on a bulletin board in the municipal building. Employees desiring a new position apply for a transfer by responding to the posting. Shapiro did not apply for a transfer to a vacant position. Lakewood claimed that, because Shapiro failed to follow Lakewood's procedure regarding interdepartmental transfers to vacant positions, it was not obligated to transfer him to the position of police dispatcher or any other position in another department of the Township. Lakewood contends that accommodating Shapiro by means of a transfer would have required it to violate its "policy" of requiring interested employees specifically to request and interview for job transfers. Relying on our decision in Donahue v. Consolidated Rail Corp., 224 F.3d 226 (3d Cir. 2000), the District Court granted Lakewood's motion for summary judgment on Shapiro's ADA claim because he did not apply for a transfer.

II.

On appeal, Shapiro argues that the District Court's grant of summary judgment for Lakewood should be reversed because Lakewood failed to engage in good faith in an "interactive process" designed to find a job into which he

could have been transferred. This appeal therefore requires us once again to address the concept of the "interactive process" that we first mentioned in Mengine v. Runyon, 114 F.3d 415 (3d Cir. 1997).

The ADA itself does not refer to the "interactive process."

The ADA provision upon which Shapiro's claim is based requires an employer to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless[the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer.]" 42 U.S.C. S 12112(b)(5)(A). A regulation issued pursuant to the ADA, however, states that,"[t]o determine the appropriate reasonable accommodation it may be necessary for [the employer] to initiate an informal, interactive process with [the employee] in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. S 1630.2(o)(3).

In Mengine, we endorsed the concept of the"interactive process" and explained:

> When the interactive process works well, it furthers the purposes of the Rehabilitation Act and the ADA. The employers will not always know what kind of work the worker with the disability can do, and conversely, the worker may not be aware of the range of available employment opportunities, especially in a large company. Thus, the interactive process may often lead to the identification of a suitable position. If it turns out there is no job which the worker (with or without accommodation) is capable of performing, then the company cannot be held liable for an ADA or Rehabilitation Act violation.

114 F.3d at 420. We observed that an employer that fails to engage in the "interactive process" runs a substantial risk: "if an employer fails to engage in the interactive process, it may not discover a way in which the employee's disability could have been reasonably accommodated, thereby risking

5

violation of the Rehabilitation Act." Id. at 420-21; see also Deane v. Pocono Medical Center, 142 F.3d 138, 149 (3d Cir. 1998) (en banc). Mengine also made it clear, however, that " 'it falls to the employee to make at least a facial showing' that there were vacant, funded positions whose essential functions he was capable of performing." 114 F.3d at 419 (quoting Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996)). We added that: "Mengine must 'demonstrate that there were vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as [his former job].' " Mengine, 114 F.3d at 418 (quoting Shiring, 90 F.3d at 832). We have elaborated on the "interactive process" in later cases. See, e.g., Jones v. United Parcel Service, 214 F.3d 402 (3d Cir. 2000); Taylor v. Phoenixville School District , 184 F.3d 296 (3d Cir. 1999).

In granting summary judgment for the Township, the District Court in the present case relied on one of these cases, Donahue v. Consolidated Rail Corp., 224 F.3d 226 (3d Cir. 2000). There, we held that in a failure-to-transfer case, "the plaintiff bears the burden of demonstrating: (1) that there was a vacant, funded position; (2) that the position was at or below the level of the plaintiff's former job; and (3) that the plaintiff was qualified to perform the essential duties of this job with reasonable accommodation." Id. at 230. We stated that "in a failure-to-transfer case, if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant -- even if it also appears that the defendant failed to engage in good faith in the interactive process." Id. at 234.[1]

_____

1. Other circuits have also held that the employee bears the burden of showing an accommodation is possible. See, e.g. , Jackan v. New York State Department of Labor, 205 F.3d 562, 567 (2d Cir. 2000) ("[A] plaintiff seeking to hold the employer liable for failing to transfer her to a vacant position as a reasonable accommodation must demonstrate that there was a vacant position into which she might have been transferred."); Smith v. Midland Brake, Inc. , 180 F.3d 1154, 1174 (10th

In the present case, the District Court held that in an ADA failure-to-transfer case, the employee with a disability must "identify a vacant, funded position for which he requested a transfer." Dist. Ct. Op. at 16 (emphasis added). In so holding, the District Court extended Donahue. Donahue did not hold or state that an employee in a failure-to-transfer case must always show that he or she formally applied for the position in question.

The Township argues that excusing Shapiro from the obligation of submitting an application for a dispatcher position would violate its "policy" regarding transfers -- which apparently consists of an unwritten practice under which vacancies for positions such as those at issue here are posted on a bulletin board, and employees desiring transfers must monitor those postings and apply for any positions that they seek.

In US Airways, Inc. v. Barnett, 122 S. Ct. 1516 (2002), the Supreme Court considered the question whether an employer may be required by the ADA's reasonable accommodation requirement to deviate from a disability-neutral rule. Rejecting the argument that such a rule always takes precedence over a request for reasonable accommodation, 122 S. Ct. at 1521, the Court expressed approval of lower court decisions holding that "a plaintiff/employee (to defeat a defendant/employer's motion for summary judgement) need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases" and that "[o]nce the

plaintiff has made this showing, the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." Id. at 1523. Applying this

_____

Cir. 1999) (en banc) ("Even if Midland Brake failed to fulfill its interactive obligations to help secure a reassignment position, Smith will not be entitled to recovery unless he can also show that a reasonable accommodation was possible and would have led to a reassignment position."); Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997) ("[W]here a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant.").

framework to the situation in which the requested accommodation would violate a seniority system, the Court held that an "employer's showing of violation of the rules of a seniority system is by itself ordinarily sufficient" to show that the requested accommodation is unreasonable, but that the employee "remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested 'accommodation' is 'reasonable' on the particular facts." Id. at 1525.

It therefore appears that the Court has prescribed the following two-step approach for cases in which a requested accommodation in the form of a job reassignment is claimed to violate a disability-neutral rule of the employer. The first step requires the employee to show that the accommodation is a type that is reasonable in the run of cases. The second step varies depending on the outcome of the first step. If the accommodation is shown to be a type of accommodation that is reasonable in the run of cases, the burden shifts to the employer to show that granting the accommodation would impose an undue hardship under the particular circumstances of the case. On the other hand, if the accommodation is not shown to be a type of accommodation that is reasonable in the run of cases, the employee can still prevail by showing that special circumstances warrant a finding that the accommodation is reasonable under the particular circumstances of the case.

The District Court's decision in this case -- entering summary judgment against Shapiro simply because he did not comply with Lakewood's policy regarding transfer applications -- cannot be reconciled with Barnett and must therefore be reversed. On remand, the District Court should follow the approach prescribed by Barnett.

III.

For these reasons, we reverse the July 10, 2001, order of the District Court granting summary judgment for the Township of Lakewood and remand the case for further proceedings.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit