Margaret D. CONNEEN, Plaintiff,

v.

**MBNA AMERICA BANK, N.A., Defendant.**

No. C.A. 00–944–GMS.

United States District Court, D. Delaware.

Jan. 23, 2002.

Jeffery K. Martin, Wilmington, DE, for Plaintiff.

Sheldon N. Sandler and Joanne C. Springer–Mesick of Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for Defendant.

*MEMORANDUM OPINION*

SLEET, District Judge.

## I. INTRODUCTION

The plaintiff, Margaret Conneen,[1] was employed by defendant MBNA America Bank ("MBNA"), until her termination for excessive tardiness in 1998. After filing administrative claims, on November 9, 2000, Conneen commenced this action against MBNA. The first count of the complaint alleges that MBNA's termination discriminated against Conneen on the basis of her alleged disability (morning sedation)[2] in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. and 28 U.S.C. § 1343(a)(4)("ADA"). Specifically, Conneen asserts that MBNA failed to accommodate her disability by withdrawing the previously granted accommodation which permitted her to report to work one hour later than other managers. According to Conneen, this unilateral withdrawal lead to a breakdown in the interactive process required by the ADA and its regulations. Connen also contends that MBNA breached its duty of confidentiality under the ADA when it contacted her physician without her authorization. Count two of the complaint alleges that MBNA also breached its covenant of good faith and fair dealing by manufacturing false grounds to support its termination of Conneen's employment.

Presently before the court is MBNA's motion for summary judgment which asserts that Conneen's termination did not violate the ADA because it was not on notice of the alleged disability, Conneen could not perform an essential function of her position, and because Conneen caused the breakdown in the interactive process. MBNA also denies that it falsified information and claims that it had Conneen's permission to contact her doctor. The court agrees with MNBA and will, therefore, grant its motion. The reasons for the court's decision are set forth in detail below.

## II. FACTS

Margaret Conneen began working at MBNA in July 1986. She was continually promoted so that by 1996, she was a Senior Personal Banking Officer and Marketing Production Manager in the Insurance Operations Department.[3] Unfortunately, in September 1996, Conneen began experiencing clinical depression. She applied for, and was granted, a short term disability leave. The leave period lasted from September 30, 1996 to February, 19, 1997.

While she was on leave, Conneen was treated by Dr. Alan Seltzer, a psychiatrist. He diagnosed her as having a "major depressive episode." D.I. 19 at 3. Based on this diagnosis, Dr. Seltzer prescribed various medications, including Effexor, an anti-depressant. One of Effexor's possible—though infrequent—side effects is morning sedation. D.I. 20 at A134 (Deposition of Dr. Seltzer). As previously explained, this condition can cause a person to be extremely tired in the morning. Although most people feel tired in the morning, those affected by morning sedation have greater difficulty getting started than the average person. *See id.* Unfortunate-

---

1. Ms. Conneen is apparently now known as Margaret Dayton. For simplicity's sake, this memorandum will refer to her as Margaret Conneen.

2. Morning sedation makes a person extremely tired in the morning. Although most persons feel tired in the morning, those affected by morning sedation have greater difficulty getting started than the average person. *See* D.I. 20 at A134 (Deposition of Dr. Seltzer).

3. Later, Conneen was transferred to the Membership Services division, but the position she assumed was nearly identical. D.I. 19 at 3.

ly, Conneen experienced the effects of morning sedation. In January 1997, Dr. Seltzer determined that Conneen was making significant progress in her treatment, and instructed her to discontinue all of the medications except Effexor.

Conneen returned to work on February 19, 1997, but on a part-time basis. On March 17, 1997, she returned to full-time status. The full-time schedule required Conneen to work an 8:00 a.m. to 5:00 p.m. shift. At this time, she began reporting to work late. Her supervisor at the time suggested that she go to MBNA's Health Services department, but she was reluctant to do so. On June 5, 1997, however, she told an MBNA nurse that she was experiencing morning sedation. The nurse provided Conneen with a temporary accommodation permitting her to report to work at 8:30 a.m. Later in 1997, Conneen was granted an accommodation that allowed her to arrive at work at 9:00 a.m. until January of 1998.

Despite these accommodations, Conneen continued to be tardy. From November 1997 until early 1998, Conneen was late several times. On at least one occasion, she did not report to work until 9:30 a.m. D.I. 20 at A97 (Conneen deposition).

On January 30, 1998, Conneen began working under a new supervisor, Ms. Rose Behm. Behm noticed that Conneen reported to work an hour later than others in her position. Conneen told Behm that she had been given an adjusted schedule, but did not mention the medical reasons for the accommodation. Behm recommended that Conneen return to the eight to five schedule, but also asked her if anything would prevent her from reporting at the normal

time. Conneen stated that she felt she was "ready to try to change it back to eight to five," and would attempt to do so. *Id.* at A99. Conneen agreed to begin reporting at eight on February 9, 1998.

Conneen was late for work on February 18, 19, 20 and 24, 1998. On February 24, her supervisor, Ms. Anne Casey,[4] admonished her to be on time in the future. Nevertheless, Conneen was tardy again on February 26 and 27, and also on March 2, 3, 4 and 5, 1998. On March 6, 1998, Conneen met with Casey and other supervisory personnel. Casey informed her that any further tardiness would result in dismissal. At this point, Conneen told Casey that a medical problem was causing her lateness. The supervisors asked her to provide documentation to the Health Services department to justify an accommodation permitting her to report to work at nine. Conneen was seen by Dr. Seltzer on March 13, 1998. He gave her a note that read, "[B]ecause of Ms. Conneen's condition, she will generally be unable to begin work before 9:00 a.m." *Id.* at A140 (Seltzer Deposition). Dr. Seltzer did not intend that this prohibition would last into the indefinite future. *Id.* at A155. Upon receipt of Dr. Seltzer's note, Conneen's supervisors allowed her to report at nine. On April 7, 1998, Patricia Peterson, a nurse in the MBNA Health Department, spoke with Dr. Seltzer regarding Conneen's medical limitations. (Peterson previously asked Conneen for authorization to speak with the doctor.) Dr. Seltzer indicated that he was in the process of adjusting Conneen's medications to alleviate the effects of morning sedation, and noted that he hoped the changes would be evident within two weeks.[5] Conneen did not com-

4. Ms. Behm was on maternity leave at this time.

5. Although Dr. Seltzer disputes that he said Conneen could report at eight, he does not dispute that in his estimation, two weeks was sufficient time for the medication adjustments to work. *See* D.I. 20 at A151 (Seltzer Deposition) ("[I]t is certainly medically reasonable and possible that it would take about two weeks before medication was adjusted.").

municate with Dr. Seltzer again prior to her termination. However, Dr. Seltzer did fill out an MBNA Certificate of Disability, ("COD") dated April 21, 1998. The COD does not mention morning sedation or suggest a work schedule. D.I. 20 at A4.

Based on the information provided by Dr. Seltzer, Nurse Peterson concluded Conneen should be able to return to a normal work schedule in two weeks, and notified Conneen and Ms. Casey. Casey and the supervising staff informed Conneen that she would be allowed to report at 9:00 until April 22, but beginning on April 27, 1998, she would have to come in at 8:00 a.m. Conneen did not contact Dr. Seltzer after this notification. Moreover, she arrived late for work on April 17.

On April 24, Casey and the supervisory staff reminded Conneen that she was to report at 8:00 a.m. on April 27. Conneen told them she was uncomfortable with this decision, but she did not ask for an extension of the accommodation or contact Dr. Seltzer. Conneen was late for work again on April 27, 28, and 29, as well as May 1. Catherine Wiley, a personnel representative, urged Conneen to meet with someone in the Health Department to investigate medical reasons for her tardiness. Conneen met with Nurse Peterson that day, and although they discussed her medication, Conneen did not state that her medication was affecting her tardiness. Nurse Peterson urged Conneen to visit employee support services.

Conneen was also late on May 6, 7, and 8. On May 15, Catherine Wiley met with her again and offered her a one week leave of absence with pay to consider her future at MBNA. Ms. Wiley also proposed that Conneen could transfer to a non-managerial position, which would allow her to report to work later. Conneen did not request an accommodation, and assured Wiley that she would report on time. Conneen did not call Dr. Seltzer.

Conneen reported on time for nearly a month, but was tardy again on June 16, 17, 18, and 22, 1998. Catherine Wiley asked her to explain her tardiness. Again, Conneen did not offer morning sedation or any other medical reason by way of explanation. She told Wiley that she was late on those days because she was stuck in traffic, gave her mother a ride, and her dog made a mess. (Conneen later admitted that these explanations were not truthful.) D.I. 20 at 47. On June 25, Conneen was terminated.

After Conneen was terminated, she contacted Dr. Seltzer. In a letter dated June 29, 1998, Dr. Seltzer wrote: "[Conneen] is ... able to continue to work full time given the same stipulation as I delineated in my previous (3/98) letter to you—regarding her occasional need to come in late in the mornings." D.I. 23 at 24–25.

Conneen also began administrative proceedings for unemployment compensation and employment discrimination with the Delaware Department of Labor ("DDL"). The Unemployment Insurance Appeal Board heard the case. The referee initially determined she was not entitled to benefits, resting his decision in part on Conneen's untruthfulness regarding her absences. The decision was reversed due to the fact that the tardiness was not willful or wanton. The Board also relied on the fact that Dr. Seltzer did not sanction the return to the prior work schedule.

Conneen also filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC"). The EEOC charge alleged that the reasonable accommodation was wrongfully withdrawn. It did not state a misrepresentation claim. The EEOC determined that there was a possibility of discrimination based on Dr. Seltzer's letter and the fact that reporting to work at 8:00 a.m. was

not an essential function of Conneen's job. The EEOC invited the parties to participate in conciliation in December 1998. In January 2000, Omar McNeill, a lawyer for MBNA, contacted Dr. Seltzer regarding these proceedings. McNeill wrote a letter summarizing Dr. Seltzer's comments to Nurse Peterson in April 1998, and asked Dr. Seltzer to verify that he made the statements and that they were accurate. *See* D.I. 20 at A61. Dr. Seltzer's reply indicated that the statements were "true." D.I. 20 at A62. Despite the parties' efforts, conciliation was unsuccessful and a right-to-sue letter was issued on August 10, 2000.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmovant. *See In re Headquarters Dodge, Inc.*, 13 F.3d 674, 679 (3d Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When deciding a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999). The nonmoving party, however, must demonstrate the existence of a material fact supplying sufficient evidence—not mere allegations—for a reasonable jury to find for the nonmovant. *See Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir.1996) (citation omitted). To raise a genuine issue of material fact, the nonmovant "need not match, item for item, each piece of evidence proffered by the movant but simply must exceed the 'mere scintilla' [of

evidence] standard." *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir.1993) (citations omitted). The nonmovant's evidence, however, must be sufficient for a reasonable jury to find in favor of the party, given the applicable burden of proof. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## IV. DISCUSSION

Although Conneen attempts to argue that the facts recited in her brief "absolutely refute" the facts provided by MBNA, the facts as outlined in this opinion are undisputed. Conneen attempts to paint Dr. Seltzer's denial that he told Nurse Peterson that Conneen could return to an 8 a.m. schedule as a genuine factual dispute. A material fact, however, is one that will determine the outcome of the case. *See In re Headquarters Dodge*, 13 F.3d at 679. For reasons that will be explained below, given the events in this case, Dr. Seltzer's note—no matter how it is interpreted—will not effect the outcome of this case. The court, therefore, finds that there are no genuine issues of material fact. The court will now explain why MBNA is entitled to judgment as a matter of law on the ADA and good faith claims.

### A. The ADA Claims

#### 1. Failure to Accommodate Under the ADA

The ADA prevents an employer from failing to provide "a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). A prima facie failure to accommodate case is made when an employee proves: (1) she is an individual with a disability under the ADA; (2) she can perform the essential functions of her position with accommodation; (3) her employer had notice of her alleged disability; and

(4) the employer failed to accommodate her. *See Rhoads v. F.D.I.C.* 257 F.3d 373, 387 n. 11 (4th Cir.2001); *Mitchell v. Washingtonville Cent. School Dist.,* 190 F.3d 1, 6 (2d Cir.1999). If any one of these elements is not present, the claim must fail.

 Additionally, both employers and employees have a duty to engage in a process which requires both parties to attempt to identify potential accommodations that will permit the disabled worker to continue working. This is known as the "interactive process." *See* 29 C.F.R. § 1630.2(*o*)(3). An employee can demonstrate that her employer failed to participate in this interactive process by showing that: (1) the employer knew about the employees disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *See Taylor v. Phoenixville School District,* 184 F.3d 296, 319–20 (3d Cir.1999).

a. Conneen's prima facie case for failure to accommodate

Conneen cannot make out a prima facie case for failure to accommodate. The first prong of the test is not in contention because the parties do not dispute that Conneen was disabled. MBNA did not, however, fail to accommodate Conneen because it did not have notice of her disability at the relevant time. Further, she could not perform the essential functions of her job with accommodation. Each of these points will be discussed in turn. Since Conneen does not dispute that she was accommodated until April 27, 1998, the court will focus on accommodation issues after this point.

 *Notice.* Employees must notify their employers of their disability. Al-

though this notice need not be in writing, and there are no "magic words" that provide notice, the employee must make it clear that she wants assistance for her disability. *See Taylor,* 184 F.3d at 313. "In other words, the employer must know of both the disability *and* the employee's desire for accommodations for the disability." *Id.* (emphasis added).

 Neither party alleges that MBNA was unaware that Conneen had some sort of disability. Rather, the dispute centers around whether Conneen voiced her desire for further accommodation to MBNA after the initial accommodation. The record is clear that after March 13, 1998, Conneen did not notify MBNA that she needed an accommodation. Conneen was repeatedly asked by her supervisors, MBNA health staff, and members of the personnel department if there was any medical reason for her tardiness. Conneen consistently responded that there was no medical cause for her lateness. She even went so far as to fabricate non-medical reasons for her lateness, rather than request accommodation. Given Conneen's complete failure to communicate any request for accommodation, it cannot be said that MBNA had notice of Conneen's desire for one.

 Conneen responds that once the initial accommodation was given, MBNA should have known that the need for accommodation was continuing. Although there are times when constructive notice can be imputed to an employer, "nothing in the ADA mandate[s] an employer to speculate as to the extent of [an employee's] disability or [her] need or desire for an accommodation simply because it is aware that she was ill." *Parelli v. Bell Atlantic–Pennsylvania,* No. 98–3392, 1999 WL 1060706, 1999 U.S. Dist. LEXIS 17868, *9 (E.D.Pa. Nov. 19, 1999) (*citing Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1046–47 (6th Cir.1998)). In-

deed, speculation would have been required in this case because the extent of Conneen's disability was not clear. Although Conneen had previously been given an accommodation, all parties agreed that the arrangement was temporary. Dr. Seltzer admits that his initial note was not intended to allow Conneen to report later indefinitely. Moreover, her disability was not continuous. Although Conneen was frequently tardy after she was told to report at 8:00 a.m., she also reported punctually for long periods—sometimes as long as a month. The court certainly does not want to punish Conneen for attempting—and succeeding—at coming in to work on time, but the court can also see how her inconsistency in reporting might have made MBNA doubt that accommodation was required.

Conneen further contends that because her disability was psychiatric in nature, she was more reluctant to divulge her illness. In *Taylor*, the Third Circuit held that where psychiatric disabilities are present, there is a higher potential for embarrassment and workplace prejudice. *See Taylor*, 184 F.3d at 315. Nevertheless, the Taylor court's conclusion was directed at preventing employees with psychiatric problems from revealing "every detail of their medical records." *Id.* In the present case, Conneen was not asked to provide any details about her illness. The March 13, 1998 note from Dr. Seltzer does not go into detail about Conneen's illness. It simply states that she should be allowed to report to work at a later time. Moreover, the fact that Conneen was able to go to MBNA on at least three occasions and ask for an accommodation belies the argument that she was to embarrassed or disabled by her condition to request an accommodation.

■ *Essential Functions.* Conneen asserts, and the EEOC agreed, that MBNA could not demonstrate that arriving at work at 8:00 a.m. was an essential function of her employment. The court disagrees. An essential employment function is a "fundamental job duty [ ] of the employment position ..." 29 C.F.R. § 1630.2(n)(1). A function is more likely to be considered essential where it is uniformly required of all persons in a particular position. *See Simon v. St. Louis County*, 735 F.2d 1082, 1084 (8th Cir.1984).

Conneen argues that punctuality was not an essential job function because it was not a fundamental duty of her job. Courts have held, however, that attendance is "an implied essential function." *Corder v. Lucent Technologies*, 162 F.3d 924, 928 (7th Cir.1998). Moreover, all of the other persons in Conneen's position were expected to report at 8:00. Also, MBNA repeatedly told Conneen that it considered punctuality to be an essential job function. Courts may give deference to an "employer's judgment as to which functions are essential." *See Deane v. Pocono Medical Center*, 142 F.3d 138, 149 (3d Cir.1998). *See also* 29 C.F.R. § 1630.2(n)(3)(i). Thus, it is clear that it is not the function of the courts to micro-manage corporate practices, and this court will not engage in that practice.

Finally, Conneen was unable to perform the function of punctual attendance even with accommodation. From November 1997 to February 9, 1998, Conneen was permitted to report to work at 9:00 a.m. Even with this accommodation, she acknowledges that she was still frequently tardy, occasionally reporting as much as thirty minutes late. Thus, Conneen cannot demonstrate that she was able to report to work on time, with or without the accommodation.

■ *Failure to accommodate.* An employer's duty to provide a reasonable accommodation is not triggered until the employee puts the employer on notice that an

accommodation is necessary. *See Jovano-vic v. In-Sink-Erator,* 201 F.3d 894, 899 (7th Cir.2000). As detailed above, Conneen did not notify MBNA of her desire for continued accommodation, and MBNA had no reason to know of it. The court therefore finds that MBNA did not fail to accommodate Conneen.

b. MBNA and Conneen's Duties under the Interactive Process Doctrine

Conneen cannot demonstrate that MBNA failed to participate in the interactive process. Although MBNA likely knew Conneen suffered some illness, it had no notice of Conneen's desire for an accommodation and acted in good faith throughout the process.[6]

■■■ *Notice.* An employer's duty to participate in the interactive process does not arise until the employee requests a reasonable accommodation. *See Taylor v. Principal Financial Group,* 93 F.3d 155, 165 (5th Cir.1996). As previously discussed, Conneen did not request a reasonable accommodation at any point after March 13, 1997. Furthermore, although an employer's duty to initiate the process may be more stringent when the employee suffers a psychiatric disability, *see Taylor,* 184 F.3d at 315, as noted above, Conneen's disability did not prevent her from requesting the initial accommodation. Finally, Conneen's disability was not continuing. At least one court has implied that the employer has no duty to initiate the interactive process where the employee's disability is "episodic, [and] not continual." *See Reed v. LePage Bakeries,* 244 F.3d 254, 261 n. 7 (1st Cir.2001). The court, therefore, finds that MBNA had no duty to initiate (or reinitiate) the interactive process.

■■■ *Good Faith.* Duty to initiate aside, once the interactive process has begun, "both parties have a duty to assist in the search for a reasonable accommodation and to act in good faith." *Id.* at 312 (quoting *Mengine v. Runyon,* 114 F.3d 415, 419–420 (3d Cir.1997)). Thus, "liability for failure to accommodate necessarily rests upon the party responsible for a 'breakdown in the process.'" *Id.* In order to determine who is responsible for the breakdown, the court must "look for signs of failure to participate in good faith." *Id.* (citing *Beck v. University of Wisconsin,* 75 F.3d 1130, 1135 (7th Cir.1996)).

■■■ Both MNBA and Conneen argue that the other party was responsible for the breakdown in the process. Conneen's central argument on this point is that MBNA acted in bad faith by unilaterally withdrawing her accommodation once it was provided. Conneen alleges that "the withdrawal of a reasonable offer of accommodation after it has been accepted would give rise to an inference of illicit motive." Pl.'s Br. at 12 (citing *Valentine v. American Home Shield Corp.,* 939 F.Supp. 1376, 1401 (N.D.Iowa 1996)).

Given the record presently before it, the court concludes that the withdrawal of the accommodation by MBNA was not done in bad faith. As stated, *both* parties have a duty to participate fully in the interactive process. Conneen's reliance on *Valentine* overlooks the fact that the district court also stated that "a party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Id.* at 1399. The record clearly demonstrates that Conneen failed to communicate. Although the court can understand her reluctance to share every detail of her illness,

6. The parties do not dispute that Conneen could have been reasonably accommodated, so this prong is not discussed.

three factors weigh heavily against Conneen.

First, Conneen had previously requested—and was granted—accommodation on at least three occasions. Therefore, she knew what needed to be done in order receive accommodation. *See Parelli,* 1999 WL 1060706, at *3, 1999 LEXIS 17868, at *9 (noting that plaintiff "had been accommodated in the past when she had made a request, and as such, knew how to ask her employer for an accommodation."). For example, in March 1998, when Conneen was told to provide medical documentation of her condition in order to be granted accommodation, she immediately contacted Dr. Seltzer and obtained a medical excuse. However, once MBNA threatened to withdraw the accommodation, Conneen remained silent. Conneen never contacted Dr. Seltzer, and never notified the MBNA health staff of her condition. Although Conneen argues that she relied on Nurse Peterson's statements regarding Dr. Seltzer's opinion, the record fails to reveal any explanation as to why—if Conneen disagreed with these purported statements— she did not immediately contact Dr. Seltzer for clarification. Thus, it appears that Conneen made no attempt to acquire the medical information necessary to substantiate a need for further accommodation. She simply cannot reasonably expect that MBNA was required to obtain the medical information necessary for her accommodation on its own volition. *See Taylor,* 184 F.3d at 317 (1999) ("[A]n employer cannot be faulted [where] . . . the employee fails to supply information that the employer needs . . .").

The second factor that weighs against Conneen is the fact that all parties—including Dr. Seltzer—understood that the initial accommodation was temporary. Conneen was thus on notice that at some point in time, if her problems continued, she would have to go back to MBNA and provide further documentation. Nevertheless, she failed to take the steps necessary to notify MBNA that she required further assistance.

The final factor that causes the court to find that Conneen was the party that acted in bad faith is the fact that not only did she fail to communicate, she affirmatively misrepresented her situation, thus thwarting MBNA's attempts to learn about her condition. When asked why she was late for work just prior to her termination, Conneen provided reasons ranging from dog care to traffic, but no medical reasons. If there were medical reasons involved, Conneen needed to notify MBNA. The law cannot permit a person who provides false information to sue another party for actions taken in accordance with those false statements. Here, MBNA relied on Conneen's silence and her affirmative misstatements. In the absence of any contradictory medical information, MBNA had no choice but to conclude that Conneen was able to report to work at 8 a.m. each day.

Thus, although Conneen argues that the accommodation was unilaterally withdrawn, she has not provided any information that demonstrates that she continued to participate in the interactive process. By contrast, MBNA appears to have been very involved in the process, and showed good faith in a number of ways. First, when Conneen presented documentation to MBNA in March 1998, she was immediately accommodated. Second, MBNA did not withdraw any accommodations without Conneen's knowledge or consent. For example, MBNA only terminated Conneen's accommodation in February 1998 after she assured her supervisors that she was able to report on time. Third, even after the accommodations were withdrawn, MBNA always provided Conneen with time to adjust, rather than making the changes effec-

tive immediately. Fourth and most important, MBNA's supervisory and medical staff met with Conneen on multiple occasions in an attempt to encourage her to discuss any medical reasons for her tardiness. The defendant even offered her another position with a schedule more conducive to her needs. *See Taylor*, 184 F.3d at 317 (noting that employer can show good faith by meeting with employee and discussing available alternatives). All in all, the court finds that MBNA acted with patience and prudence in this situation, given the information available to it at the time.

For all of the foregoing reasons, the court finds that Conneen has not made out a prima facie case of failure to accommodate. The court further finds that Conneen was at fault for the breakdown of the interactive process, and that she has not demonstrated that MBNA similarly acted in bad faith. Therefore, MBNA is entitled to judgment as a matter of law on Conneen's failure to accommodate claims.

### 2. Breach of Confidentiality under the ADA [7]

 Conneen argues that MBNA breached its duty of confidentiality under the ADA when Omar McNeill contacted Dr. Seltzer during the EEOC conciliation without her consent. This argument is without merit. First, although the ADA does state that certain medical information obtained *at the request* of the employer must be kept confidential, *see* 42 U.S.C.

§ 12112(d), Conneen was not an employee of MBNA at the time the information was sought, so these provisions are inapplicable. Moreover, Delaware courts have held that after a plaintiff initiates a lawsuit, she waives any physician-patient privilege, and lawyers for the defense are allowed to informally contact the doctor without the patient's consent.[8] *See Green v. Bloodsworth*, 501 A.2d 1257, 1258–59 (Del.Super.1985). Thus, Conneen cannot invoke a physician-patient privilege because she had instituted a claim at the EEOC prior to McNeill's conversation with Dr. Seltzer.[9] For these reasons, Conneen's confidentiality claim fails.

### B. MBNA's Breach of the Covenant of Good Faith and Fair Dealing

 MBNA did not breach its duty to act in good faith. In Delaware, at-will employees can be fired for any reason, so long as the employer does not breach the covenant of good faith and fair dealing. *See E.I. DuPont de Nemours v. Pressman*, 679 A.2d 436, 437, 441–44 (Del.1996). In Delaware, this covenant is breached when the employer misrepresents a material fact upon which the employee relies in deciding to accept a new position, when the employer falsifies or manipulates records to create false grounds for discharge, when the employer abuses its superior bargaining position to deprive the employee of compensation, or where the termination would violate public policy. *See id.* at 441–44.

---

7. This issue was not briefed by plaintiff, and although, as a result, the court considers the issue waived, it will nevertheless discuss it in the interest of completeness. However, because the court finds the issue is without merit, it will not discuss whether this claim was administratively exhausted.

8. The breach of the covenant of good faith claim arises under Delaware state law. The court, therefore, will refer to Delaware law in discussing the claim.

9. Although no lawsuit had yet been filed here, the *Green* court relied on the Delaware rules of evidence which state that the patient waives her privilege "in any *proceeding*" where her health is at issue. DEL. UNIFORM R. EVID. 503(d)(3) (emphasis added). The EEOC and DDOL administrative proceedings should thus similarly fall under this rule.

Conneen alleges that MBNA falsified and manipulated documents because Nurse Peterson "falsely stated" or "misrepresented" the opinion of Dr. Seltzer regarding Conneen's change in schedule. This claim cannot succeed. As MBNA points out, there is absolutely no evidence in the record to demonstrate that it falsified anything. Dr. Seltzer himself has verified at his deposition, in his affidavit, and in his note to Mr. McNeill that he did in fact indicate to Nurse Peterson that two weeks would be a proper time for the change in medication to take effect. Nurse Peterson's statements to Conneen were consistent with that two week timeframe. Therefore, Nurse Peterson did not prevaricate when she said that given Dr. Seltzer's statements, it would be appropriate for Conneen to return to a normal schedule in two weeks.[10]

More important, regardless of what Dr. Seltzer said, Conneen has failed to allege a single fact that would allow the court to find that Nurse Peterson's interpretation was motivated by bad faith.[11] It is undisputed that Dr. Seltzer told Nurse Peterson that the medication adjustment would take two weeks. Thus, it required no stretch of the imagination—and it was certainly not bad faith—for Nurse Peterson to conclude that Conneen could resume a regular schedule after two weeks. This was a

reasonable interpretation of the undisputed facts provided to her by Dr. Seltzer. On these facts, the court is unwilling to find animus on the part of Nurse Peterson. The court, therefore, cannot find that Nurse Peterson misrepresented or falsified any statements of Dr. Seltzer.[12,13] Thus, MBNA did not violate breach the covenant of good faith.

## V. CONCLUSION

For the foregoing reasons, the court will grant MBNA's motion for summary judgment on both the ADA and breach of covenant of good faith claims.

---

10. Conneen relies heavily on the fact that Dr. Seltzer maintains that he never said Conneen could definitely return to an eight to five schedule in two weeks. However, it is equally as clear that he did not say that she could *not* definitely return to a normal schedule. If Dr. Seltzer had made such a statement, the court believes there might have been a genuine issue of material fact. However, since Nurse Peterson's statements were completely consistent with the time-frame presented by Dr. Seltzer, the court finds there are no genuine issues of material fact.

11. Bad faith may have been demonstrated if Nurse Peterson instructed Conneen to return

to work in one week, as opposed to the two weeks suggested by Dr. Seltzer. However, those are not the facts of this case.

12. Regarding the "misrepresentation" allegation, Conneen has also failed to demonstrate how, if at all, she relied on Nurse Peterson's statements.

13. Since the court finds that the good faith claim is meritless, it will decline to discuss whether the parties were collaterally estopped from litigating the truthfulness of Dr. Seltzer's statement's on this point.