# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CORY M. PATTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N23C-08-316 EMD |
| | ) | |
| QUALITY ENTERPRISES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: December 15, 2023
Decided: December 19, 2023

*Upon Defendant's Motion to Dismiss*
***DENIED***

Patrick C. Gallagher, Esquire, Jacobs & Crumplar, P.A., Wilmington, Delaware. *Attorney for Plaintiff Cory M. Patton.*

Anthony N. Delcollo, Esquire, Michael K. DeSantis, Esquire, Alpa V. Batia, Esquire, Offit Kurman, P.A., Wilmington, Delaware. *Attorneys for Defendant Quality Enterprises, LLC.*

**DAVIS, J.**

## I.    INTRODUCTION

This is a civil action concerning claims of employment discrimination. Plaintiff Cory M. Patton alleges that his former employer, Defendant Quality Enterprises, LLC ("Quality" or "Defendant"), fired him following a diabetic health incident in violation of Delaware's Persons with Disabilities Employment Protections Act ("DPDEPA").[1] On August 31, 2023, Mr. Patton filed his Complaint with this Court alleging counts of (i) Disparate Treatment; and (ii) Failure to Accommodate.

---

[1] Complaint ¶ 28 (hereinafter "Compl.") (D.I. No. 1). The DPDEPA is 19 Del. C. §§ 702, *et. seq.*

Quality filed a Motion to Dismiss (the "Motion") pursuant to Superior Court Civil Rule 12(b)(6) on October 2, 2023.[2] Quality argued that Mr. Patton has failed to state a claim upon which relief can be granted because (i) his diabetes does not qualify as a disability under the law; and (ii) even if it did, he has failed to sufficiently plead facts supporting his claims.[3] Mr. Patton opposed the Motion and filed his Response on October 22, 2023.[4] The Court held a hearing on the Motion on December 15, 2023.[5] At the conclusion of the Hearing, the Court took the Motion under advisement.

For the reasons set forth below, the Motion is **DENIED**.

## II.   RELEVANT FACTS

### A. THE PARTIES

#### i.   *Plaintiff*

Mr. Patton is a resident of New Castle, Delaware.[6] He was employed by Quality as a Shop Laborer between 2017 and March 25, 2022, the date of his termination.[7]

#### ii.   *Defendant*

Quality is a Delaware Limited Liability Company located in New Castle, Delaware.[8] According to Plaintiff, Quality "performs fleet automotive repair and commercial building maintenance" and has somewhere between four and twenty employees.[9]

---

[2] Def.'s Mot. to Dismiss (hereinafter "Mot.") (D.I. No. 4).
[3] *See generally* Mot.
[4] Resp. to Def.'s Mot. to Dismiss (hereinafter "Resp.") (D.I. No. 5).
[5] D.I. No. 6.
[6] Compl. ¶ 1.
[7] *Id*. ¶ 4.
[8] *Id*. ¶ 2 (All facts here are supplied by Plaintiff. Defendant has not filed an Answer with the Court or provided any facts outside of its Motion to Dismiss).
[9] *Id*. ¶ 3.

## B. QUALITY'S TERMINATION OF MR. PATTON

Mr. Patton has diabetes and wears an insulin pump.[10] Mr. Patton had previously experienced a diabetic attack while at work, "[o]ne or two years prior" to his termination date.[11] While responding to this first incident, David Laird, Jr., the owner of Quality, was informed by Mr. Patton's husband Robyn Jones that Mr. Patton was a diabetic and Mr. Laird, Jr. should "either call an ambulance or get sugar into Mr. Patton immediately."[12]

After that incident, Mr. Patton's medication was stored in Quality's refrigerator in case he suffered another attack.[13] In addition, Mr. Patton "usually carried orange juice with him at all times while at work in case of such an emergency."[14] Mr. Patton claims that Mr. Laird, Jr. was aware that he kept his medication in the refrigerator and carried orange juice.[15]

On March 25, 2022, Mr. Patton and David Laird, Sr., Mr. Laird's father, were working off-site at M-Cubed Technologies ("M-Cubed").[16] M-Cubed is a company in Newark, Delaware for which Quality was a sub-contractor.[17] Mr. Patton had worked at M-Cubed's facility for one month in 2021.[18] Mr. Patton had also been to the site approximately twenty times in 2022 prior to March 25, 2022.[19]

Mr. Patton claims he was "not allowed" to take his orange juice or other food or drink to M-Cubed.[20] Mr. Patton also alleges that his medication "was not transported with him."[21] Mr.

---

[10] *Id.* ¶¶ 9, 11.
[11] *Id.* ¶ 9.
[12] *Id.*
[13] *Id.* ¶ 12.
[14] *Id.* ¶ 13.
[15] *Id.* ¶; Resp. ¶ 1.
[16] Compl. ¶ 14, 16.
[17] *Id.*
[18] *Id.* ¶ 15.
[19] *Id.*
[20] *Id.* ¶ 17, 19; *see also* Resp. ¶ 1 ("On March 25, 2022, Defendant sent Patton to work off-site without his medication or any food or drink.").
[21] Compl. ¶ 19.

Patton says he suffered a diabetic attack on March 25, 2022 during which he "became incoherent" and has limited memory.[22] Mr. Patton does recall sitting outside at M-Cubed following the incident.[23] Mr. Laird, Jr. was also present.[24] Mr. Patton states that "[n]either Laird Sr. or Laird Jr. attempted to provide Mr. Patton with sugar."[25]

After this, Mr. Patton claims that "Laird Jr. called Jones, requesting Jones pick up Mr. Patton [at] M-Cubed and informing Jones that Mr. Patton was fired."[26] Later that day, Mr. Patton says that he overheard the following conversation between Mr. Jones and Mr. Laird:

JONES:       I don't know, Dave. He's been here for five years, man. You've known he's had diabetes. It's not a real reason to fire him.

LAIRD, JR.:  Well . . . he's not going to get hurt on my dime like this, man. I've had a talk with him. Where's his insulin and stuff?

JONES:       It's on him. He's got a pump right here.

LAIRD, JR.:  Well, I mean . . . why is it not working?

JONES:       It does work. . . . He's gotta have orange juice readily available. He said his problem was . . . he didn't have access to his orange juice. . . .

LAIRD, JR.:  . . . Ok, I can't babysit him all day.[27]

As a result of his termination, Mr. Patton filed a *pro se* Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC") in October 2022.[28] The EEOC subsequently "transferred the handling" of Mr. Patton's Charge to the Delaware Department of Labor Office of Anti-Discrimination ("OAD").[29] Mr. Patton was

---

[22] Resp. ¶ 1; Compl. ¶ 21.
[23] Compl. ¶¶ 21-23.
[24] *Id.*
[25] *Id.*
[26] *Id.* ¶ 24.
[27] *Id.* ¶ 26.
[28] *Id.* ¶ 5.
[29] *Id.* ¶ 6.

4

issued Right to Sue Letters from the OAD and the EEOC on June 6, 2023 and July 12, 2023, respectively.[30]

Mr. Patton was required to file suit within ninety days of the issuance of the Letters, and timely filed his Complaint with this Court on August 31, 2023.[31]

## III.     PARTIES' CONTENTIONS

### A. DEFENDANT'S MOTION TO DISMISS

Quality seeks to dismiss the Complaint pursuant to Civil Rule 12(b)(6). Quality argues that Mr. Patton's charges of disparate treatment and failure to accommodate in violation of the DPDEPA should be dismissed because Mr. Patton has failed to state a claim for which relief can be granted in three respects.

First, Quality claims that Mr. Patton has failed to plead a demonstrable disability as contemplated by the statute because his diabetes does not qualify as such a disability.[32] Next, Quality maintains that, even if Mr. Patton's diabetes was a qualifying disability under the DPDEPA, Mr. Patton has nevertheless failed to sufficiently plead disparate treatment by Quality.[33] Finally, Quality contends that Mr. Patton has failed to plead failure to accommodate because his Complaint states only a "conclusory allegation" that he requested accommodations from Quality, and that this is insufficient to support the claim.[34]

---

[30] *Id.* ¶¶ 7, 8.

[31] *Id. See also, e.g. Paitsel v. State*, 2016 WL 1424828 at *4 (Del. Super. Apr. 7, 2016) ("A charging party may file a civil action for discrimination in the Superior Court only after exhausting all administrative remedies and receiving a Delaware or Federal Right to Sue Notice.").

[32] Mot. ¶ 2.

[33] *Id.* ¶ 4.

[34] *Id.* ¶¶ 5-6.

**B. PLAINTIFF'S RESPONSE**

Mr. Patton responds that Quality's Motion to Dismiss should be denied because: (i) he has sufficiently pled that his diabetes qualifies as a disability for purposes of the DPDEPA;[35] (ii) he has established a *prima facie* case of disparate treatment sufficient to survive a motion to dismiss;[36] and (iii) he has pled facts to show that Quality was on notice of his need for an accommodation.[37] Mr. Patton asserts that this is sufficient for the claims in the Complaint to proceed.

## IV. STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[38] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[39]

## V. DISCUSSION

Delaware courts analyze discrimination claims under the *McDonnel Douglas* burden-shifting framework.[40] First, the employee must make a *prima facie* case of discrimination by a preponderance of the evidence.[41] If the employee is successful, the burden then shifts to the employer to show "legitimate non-discriminatory" reasons for its actions.[42] If the employer

---

[35] Resp. ¶ 3.
[36] Resp. ¶ 5.
[37] Resp. ¶ 6.
[38] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[39] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[40] *McGlothlin v. Petrunich Oral & Maxillofacial Surgery*, 2020 WL 2783811, at *3 (Del. Super. July 15, 2022).
[41] *Id*.
[42] *Id*. (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

meets that burden, the burden shifts back to the employee to show that the reasons offered by the employer are merely pretextual.[43]

On a motion to dismiss, "a claim of employment discrimination necessarily survives . . . so long as the requisite *prima facie* elements have been established. That is so because 'it may be difficult' for a plaintiff to prove discrimination '[b]efore discovery has unearthed relevant facts and evidence.'"[44] In other words, "an employment discrimination *pleading* does not have to meet the prima facie standard used to evaluate employment discrimination [and therefore the] 'plausible' standard applies to the evaluation of a Motion to Dismiss in an employment discrimination case."[45]

Therefore, Mr. Patton's Complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…" to defeat Quality's Motion.[46] The Court finds that the Complaint properly pleads factual content to satisfy the required pleading standards at this stage in the proceedings.

### A. PLAINTIFF HAS SUFFICIENTLY PLED A DISPARATE TREATMENT CLAIM

To state a claim for disparate treatment under the Americans with Disabilities Act ("ADA"), and therefore the DPDEPA,[47] "an individual must show that: '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential

---

[43] *Id.*

[44] *Castleberry v. STI Group*, 863 F.3d 259, 266 (3d Cir. 2017) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 512, (2002)).

[45] *Apau v. Printpack Inc*., 722 F. Supp. 2d 489, 492 (D. Del. 2010) (emphasis added).

[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[47] Because the DPDEPA "mirrors" the ADA, federal case law may provide guidance to state law claims. *See Tolliver v. Delmarva Found. for Med. Care*, 2020 WL 4335521, at *3 (D. Del. July 28, 2020) ("Delaware's employment discrimination laws are substantially the same as their federal counterparts, and it is appropriate to apply federal case law to discrimination claims raised under the . . . DPDEPA.").

functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'"[48]

### i. Plaintiff has sufficiently pled that he is disabled.

In language nearly identical to that of the ADA, the DPDEPA defines "Person with a disability" as:

> [A]ny person who satisfies any 1 of the following:
>
> a. Has a physical or mental impairment which substantially limits 1 or more major life activities.
> b. Has a record of such impairment.
> c. Is regarded as having such an impairment.[49]

"Whether an individual is substantially limited in performing a major life activity is a question of fact."[50] The Court does not decide contested questions of fact on a motion to dismiss, but instead draws all reasonable inferences in favor of the non-moving party.[51] Here, the Court finds that Mr. Patton has sufficiently pled facts supporting the inference that he is a "person with a disability" under the DPDEPA.

First, Mr. Patton maintains that diabetes qualifies as a disability under the relevant statutory provisions.[52] Mr. Patton notes that Quality's reliance on *Schultz v. Potter* to argue otherwise is "misplaced" because that 2005 decision predated the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA").[53] Among the changes under the ADAAA, the endocrine function was identified as a "major bodily function" and therefore part of "major life

---

[48] *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).
[49] 19 Del. C. § 722 (4).
[50] *Stokes v. Ctr.*, 2016 WL 3344375, at *4 (D. Del. June 13, 2016).
[51] *See, e.g., Doe 30's Mother v. Bradley*, 58 A.3d 429, 445 (Del. Super. 2012) ("While it is true that the Court need not accept conclusory assertions as true when deciding a motion to dismiss, the Court will not adjudicate contested issues of fact on a motion to dismiss, nor will it deem a pleading inadequate under Rule 12(b)(6) simply because a defendant presents facts that appear to contradict those plead by the plaintiff.").
[52] Resp. ¶ 2.
[53] *Id*. ¶ 4 (*see Schultz v. Potter*, 142 Fed.Appx. 598 (3d Cir. 2005)).

8

activities."[54] A 2021 provision added to the DPDEPA "put[s] the DPDEPA in line"[55] with the ADAAA, and further defines "major life activities" as:

> [A]lso including the operation of a major bodily function, including functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological brain, respiratory, circulatory, endocrine, and reproductive functions.[56]

Mr. Patton relies on *Cloutier v. GoJet Airlines, LLC* as "a subsequent case evaluating whether diabetes, which affects the endocrine system, was a disability under the [ADA] as amended."[57] Mr. Patton points out that the court in that case "noted '[a] number of courts have observed that, under the ADAAA and its implementing regulations, diabetes will generally qualify as a disability for purposes of the [ADA].'"[58]

Quality does not argue that Mr. Patton does not have diabetes, but rather that diabetes does not qualify as a disability for purposes of state and/or federal law.[59] Quality states that an impairment that "can be corrected by medication or other measures . . . does not rise to the level of "substantially limit[ing] a major life activity."[60] Quality cites *Sutton v. United Airlines*, a 1999 decision that stated no disability could exist where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken."[61]

However, through the ADAAA, "Congress amended the ADA to clarify and broaden the scope of prong three—the 'regarded as' provision—and explicitly rejected the Supreme Court's interpretation in *Sutton*."[62] Instead, the Third Circuit has held that the current test "is whether the

---

[54] *Id*. ¶ 3 (The relevant provision of the ADAAA is codified at 42 U.S.C. § 12102(2)(B)).
[55] *Id*. (quoting 19 Del. C. 722(4)(c)(1)).
[56] 19 Del. C. § 722(4)(c)(1).
[57] Resp. ¶ 3 (citing *Cloutier v. GoJet Airlines, LLC*, 311 F. Supp. 3d 928, 937 (N.D. Ill. 2018)).
[58] *Id*.
[59] Mot. ¶ 5. *See also* Compl. ¶¶ 10-11 ("In its Position Statement with the OAD, Quality acknowledged it was aware of Mr. Patton's diabetes diagnosis . . . ." and that Mr. Patton wore an insulin pump.).
[60] *Id.*
[61] *Id*. (*see Sutton v. United Airlines*, 527 U.S. 471, 482-83 (1999).
[62] *Bardell v. Banyan Delaware, LLC*, 2023 WL 6810092, at *3 (D. Del. Oct. 16, 2023). Prong three of the DPDEPA is 19 Del. C. § 722(4)(c).

employer 'perceived' [the employee] as impaired, 'whether or not the [perceived] impairment limits or is perceived to limit a major life activity.'"[63]

Mr. Patton has presented facts that he has diabetes, and that diabetes may be considered a disability under current interpretations of the ADA and related statutes. The Court finds, therefore, that Mr. Patton has pled facts sufficient to survive a motion to dismiss as to whether he is a person with a disability under the ADA and DPDEPA.

Mr. Patton additionally—and persuasively—argues that his Complaint is sufficient to survive a motion to dismiss even without the statutory changes to the ADA and DPDEPA.[64] Mr. Patton asserts that a Complaint "must only 'put the opposing party on notice of the claim brought against it . . . .'" in order to withstand a motion to dismiss.[65] Here, Mr. Patton states that Quality "knows Patton asserts diabetes as his disability; the Complaint is sufficient under Delaware procedure even without the amendments to the DPDEPA."[66]

### ii. *Plaintiff has sufficiently pled that he was otherwise qualified to perform the essential functions of the job.*

Mr. Patton states in his Complaint that "[d]espite his disability, Mr. Patton was qualified for his job. With the accommodations provided to him (i.e., his medication in Quality's refrigerator and his carrying of food and beverage with him), Mr. Patton was able to perform the functions of his job at Quality."[67] Mr. Patton was employed at Quality from 2017 to March,

---

[63] *Id.* at *4 (D. Del. Oct. 16, 2023) (quoting *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (quoting 42 U.S.C. § 12102(3)(A))). *See also* 29 C.F.R. § 1630.2 ("The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis.").
[64] Resp. ¶ 4.
[65] *Id* . (quoting *Martinez v. E.I. Dupont de Nemours & Co.*, 2012 A.3d 1, 14-15 (Del. Super. Dec. 5, 2012) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).
[66] *Id.*
[67] Compl. ¶ 31.

10

2022. This extended period of employment alone suggests that Mr. Patton was qualified for purposes of stating a claim sufficient to withstand a motion to dismiss.[68]

### iii. Plaintiff has sufficiently pled that he suffered an otherwise adverse employment decision as a result of discrimination.

Under the ADA, "[a]n adverse employment action is one which alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee."[69] Mr. Patton has pled that he was terminated and that this constitutes an adverse employment action.[70] The Court agrees and finds that Mr. Patton has pled facts sufficient to infer that his termination was a result of discrimination.

Mr. Patton claims that his termination was due to his diabetes. Quality asserts that Mr. Patton supports this claim "solely [with] a conversation he recalled overhearing between his husband and David Laird" and that this is "insufficient under the law."[71] Quality allows that Mr. Patton "need not provide evidentiary support for each element of his disparate treatment claim at this early juncture," but argues that "he still must aver something 'more than [a] naked assertion' that his termination was due to his medical condition . . . ."[72]

Applying the applicable legal standard, the Court finds that Mr. Patton has sufficiently pled facts to support the inference that his termination was due to his diabetes. Even if the conversation alleged to have occurred between Mr. Laird and Mr. Jones did not occur, or could ultimately not be proven to have occurred, Mr. Patton has also presented facts that he was

---

[68] *See, e.g., Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) ("Because Taylor held her position as secretary to the principal for many years . . . there is no serious dispute that she satisfies the prerequisites for the position.").

[69] *Speer v. Norfolk Southern Ry. Corp.*, 121 Fed. Appx. 475 (3d Cir. 2005).

[70] Compl. ¶ 24.

[71] Mot. ¶ 8.

[72] *Id.* (quoting *Blades v. Mosaic of Delaware*, 2017 WL 3868238, at *6 (D. Del. Aug. 31, 2017)).

11

terminated directly following a diabetic attack after having worked for Quality for over four years. This alone is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[73]

Therefore, having sufficiently pled all elements, Mr. Patton has stated a claim for disparate treatment.

### B. PLAINTIFF HAS SUFFICIENTLY PLED FAILURE TO ACCOMMODATE

Under the ADA, an employee bringing a failure to accommodate claim must show: "(1) he was disabled, and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated."[74] The Court finds that Mr. Patton has sufficiently pled facts in support of each of these elements.

#### i. Plaintiff Has Sufficiently Pled He Was Disabled and Quality Knew It.

Mr. Patton's Complaint states facts to show that Quality was aware he has diabetes, and that the basis of his claim is that he was wrongfully terminated because he has diabetes. Quality disputes whether diabetes qualifies as a disability; however, that is not material at this stage of the proceedings. The Complaint is sufficient to "put the opposing party on notice" as required to state a claim and survive a motion to dismiss.[75]

---

[73] *Ashcroft*, 556 U.S. at 663.

[74] *Rodriguez v. Cap. Vision Servs.*, 2023 WL 2018904, at *13 (D. Del. Feb. 15, 2023) (citing *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017). Failure to accommodate claims under the ADA may also be subsumed into claims of disparate treatment, as the failure may constitute discrimination under the third prong of that test. *See, e.g., Twillie v. Erie School District,* 575 Fed.Appx. 28, 33 (3d Cir. 2014) ("[d]iscrimination under the ADA . . . includes failing to make reasonable accommodations for a plaintiff's disabilities.") (quoting *Taylor*, 184 F.3d at 306).

[75] *Martinez*, 2012 A.3d at 14-15.

Quality does not argue that it was unaware of Mr. Patton's diabetes. In fact, Quality states that Mr. Patton's Complaint "establish[es] that Defendant, through Laird, was *aware of the Plaintiff's medical condition* and the steps he took to manage that condition while on the job."[76]

The Court has already found that Mr. Patton has sufficiently pled he is a person with a disability due to his "medical condition." Quality here admits it was aware of that condition. This is sufficient to plead the first prong of Mr. Patton's failure to accommodate claim.

### ii. Plaintiff has sufficiently pled he requested an accommodation or assistance.

Quality argues that it "is not required to speculate as to the nature the Plaintiff's desire for an accommodation, merely by virtue of being aware of the Plaintiff's medical condition."[77] Quality further asserts that any duty it may have had would not have been triggered "until it was placed on notice" by Mr. Patton that an accommodation was necessary.[78]

Quality states the proper standard for evaluating this prong fully.[79] However, at the pleading stage, Mr. Patton has nevertheless alleged specific facts which, taken as true, support the reasonable inference that Quality was on notice that he needed assistance.[80]

Mr. Patton argues that Quality was on notice even if he "did not ask for a specific accommodation," because Quality knew he needed "some sort of an accommodation."[81] Mr.

---

[76] Mot. ¶ 10 (emphasis added).
[77] *Id.* ¶ 11 (citing *Conneen v. MBNA Am. Bank, N.A.*, 182 F. Supp. 2d 370, 377 (D. Del. 2002), *aff'd*, 334 F.3d 318 (3d Cir. 2003).
[78] *Id.*
[79] *See, e.g.*, *Herman v. Kvaerner of Phila. Shipyard, Inc.*, 461 F. Supp. 2d 332, 337 (E.D. Pa. 2006) (internal citations and quotations omitted):
> The touchstone of the law of reasonable accommodations in the Third Circuit is the requirement that an employee initiate and engage in an interactive process with the employer regarding the employee's need for an accommodation. Although the employee bears the burden of informing the employer as to his or her disability and initiating the interactive process, the employer must participate in the process in good faith. The employee need not request a specific accommodation in order to meet his or her burden.

[80] *See, e.g.*, *Twillie*, 575 F. App'x at 32 (dismissing a complaint which "did not allege any specific acts or conduct . . . which suggest that the Defendants failed to reasonably accommodate [plaintiff's] disability.").
[81] Resp. ¶ 6 (citing *Herman,* 461 F. Supp. 2d at 338) (District Court denied the employer's motion for summary judgment where employer was aware of diabetic employee's condition and need to eat and take medication at certain times).

13

Patton alleges that Quality "knew Patton had a previous diabetic attack at work, kept medication at work, and kept orange juice on himself at all times. Defendant allowed Patton to keep some of these things at its shop. Defendant was thus on notice such an accommodation was needed when Patton was sent off-site."[82] The Court agrees that these facts, as pled, reasonably infer that Quality was on notice of Mr. Patton's need for an accommodation.

### iii. *Plaintiff has sufficiently pled Quality did not make a good faith effort to assist.*

Mr. Patton claims that his medication "was not transported with him to the off-site facility at which he suffered his diabetic attack, nor was he "allowed to take any food or drink with him" into the facility.[83] He also alleges that neither Mr. Laird, Jr. nor his father "attempted to provide" him with sugar after the attack.[84]

Quality does not refute these claims and instead rests it argument on the contention that, without notice of Mr. Patton's need for an accommodation, its duty to provide such an accommodation was not triggered.[85] Again, Quality is correct that a full analysis of Mr. Patton's claim would require more.

The circumstances under which the employer's duty is triggered are explained under EEOC guidelines:

> Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability.[86]

---

[82] *Id.*
[83] Compl. ¶ 17.
[84] *Id.* ¶ 23.
[85] *See* Mot. ¶¶ 9-11.
[86] *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) (quoting 29 C.F.R. Pt. 1630, App. § 1630.9).

The Court notes, however, that this analysis is premature on a motion to dismiss. The Court has already found that Mr. Patton has sufficiently pled that Quality was on notice of his need for assistance. Having done so, the Court finds that Mr. Patton has also pled facts sufficient to support a reasonable inference that Quality did not make a good faith effort to provide him with that assistance. Viewed in the light most favorable to Mr. Patton and taken as true, an employer's prohibition of an employee's access to medication or food under these circumstances does not demonstrate "a flexible, interactive process" or good faith.

### iv. Plaintiff has sufficiently pled that Quality could have provided reasonably accommodations.

Under the ADA, "reasonable accommodations" are defined as "modifications or adjustments to the work environment, or to the manner . . . under which the position held . . . is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."[87] An employer is required to make such accommodations "unless the [employer] can demonstrate that the accommodations would impose an undue hardship on the operation of the business of the [employer]."[88] The "undue hardship inquiry focuses on the hardships imposed . . . in the context of the particular [employer's] operations."[89]

As pled, Mr. Patton has stated facts to support an inference that he could have been reasonably accommodated by Quality. Indeed, while Mr. Patton worked on-site at Quality, Quality accommodated Mr. Patton because he had access to his medication and orange juice. Even if Quality could argue that accommodating Mr. Patton presented an "undue hardship," such a fact-specific determination is not properly resolved on a motion to dismiss.

---

[87] 29 C.R.F. 1630.2 (o)(1)(ii).
[88] 42 U.S.C. § 12112(b)(5)(A).
[89] *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402, (2002).

15

Therefore, having sufficiently pled all elements, Mr. Patton has stated a claim for failure to accommodate.

## VI.    CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion.

**IT IS SO ORDERED.**

December 19, 2023
Wilmington, Delaware

                                          */s/ Eric M. Davis*
                                          Eric M. Davis, Judge

cc:    File&ServeExpress

16